[S. F. No. 15084. In Bank.—July 31, 1934.]

EDMOND MIRABITO, a Minor, etc., Respondent, v. SAN FRANCISCO DAIRY COMPANY (a Corporation) et al., Appellants.

Pillsbury, Madison & Sutro, Eugene M. Prince and Norbert Korte for Appellants.

Sol Silverman and George Olshausen for Respondent.

Bronson, Bronson & Slaven, as *Amici Curiae* on behalf of Appellants.

THE COURT.—A hearing was granted in this case after decision by the District Court of Appeal, First Appellate District, Division Two, for the purpose of giving further consideration to the contention of appellants that the verdict was arrived at by means of a resort to chance and hence might be impeached by affidavits of the jurors.

The facts are stated in the opinion of Mr. Justice Spence as follows:

"This action was brought to recover damages for personal injuries sustained by plaintiff, a boy seven years of age. A jury trial was had and a judgment for $5,000 was entered in favor of plaintiff and against the defendants San Francisco Dairy Company and Ray Vogel. Said defendants appeal from said judgment.

"On this appeal it is urged: (1) That a new trial should have been granted because of misconduct on the part of the jury 'in resorting to the determination of chance'; (2) that the evidence was insufficient to sustain a judgment against the defendant San Francisco Dairy Company, and (3) that the damages awarded were excessive.

"Due to the nature of appellants' contentions, a detailed statement of the facts surrounding the happening of the accident is not required. Suffice it to state that a milk truck driven by the defendant Vogel and bearing the name of the San Francisco Dairy Company struck the rear end of another automobile, which, in turn, struck a wooden barricade erected around an excavation. Some of the planks of the barricade were broken by the impact and one of said planks was thrown against respondent, thereby causing his injuries.

"During the trial one of the jurors was excused. The parties stipulated that the trial might proceed with eleven jurors and further stipulated that it should require nine of the eleven jurors to return a verdict. Upon the motion for a new trial appellants presented numerous affidavits for the purpose of showing misconduct. It appears therefrom that after nine of the jurors had agreed to return a verdict in favor of plaintiff, the question of the amount of the verdict was discussed at length. The amounts proposed ranged from $1,500 to $10,000, but the affidavits do not show what amounts were proposed between these two sums or how many jurors were agreed upon any particular sum.

The affidavits of three of the jurors then continued as follows: 'After considerable discussion the jurors could not agree upon a definite and certain sum as their verdict and it was apparent that it would be difficult to arrive at an amount upon which nine of the jurors would agree and that a deadlock might result; thereupon it was proposed and the jurors agreed that the jury would proceed and arrive at its verdict as follows: A single vote should be taken on two amounts, one for $5,000 and the other for $2,000, and the amount for which a majority of the jurors should vote would be considered and returned as the unanimous verdict of the jury. Thereafter, and pursuant to said agreement, a ballot on said two amounts was taken and the vote recorded thereon was eight jurors for $5,000 and three jurors for $2,000. Thereupon, pursuant to said previous agreement and not otherwise, and without further deliberation, discussion, balloting or assent on the part of or by any of the jurors, said sum of $5,000 was entered by the foreman in the form of verdict prepared by the court, and no further ballot was taken or assent given to said verdict other than as hereinabove set forth. Thereupon said verdict for $5,000, without further discussion, ballot or assent, was returned to the court pursuant to said agreement and not otherwise as the unanimous verdict of the jury. Affiant is one of the jurors who voted for the sum of $2,000 and affiant did not thereafter change his said vote while in the jury room, and upon the poll of the jury in court after said verdict had been so returned affiant stated that said verdict was his verdict solely because of said agreement to abide by the vote of the majority.' ''

 The respondent offered counter-affidavits made by some of the jurors, including some of the same jurors whose affidavits were offered by the defendants, which tended to show a discussion and acceptance of the $5,000 verdict before it was written and announced by the foreman.

It is conceded that under section 657, subdivision 2, of the Code of Civil Procedure, misconduct of the jury may be shown by affidavits of the jurors only when "any one or more of the jurors have been induced to assent to any general or special verdict, or to a finding on any question submitted to them by the court, by a resort to the determination of chance". Unless an agreement to abide by the

vote of a majority, which is less than the number of jurors required to reach a lawful verdict, constitutes a "resort to the determination of chance" the affidavits offered upon the motion for new trial were incompetent.

"Chance" is commonly understood to imply an absence of explainable or controllable causation and has, moreover, been defined by this court as "hazard, risk, or the result or issue of uncertain or unknown conditions or forces". (*Dixon* v. *Pluns*, 98 Cal. 384, 387 [33 Pac. 268, 35 Am. St. Rep. 180, 20 L. R. A. 698].) That case held the so-called quotient verdict to be a resort to the determination of chance and is urged by appellants as determinative of the question here raised. We do not regard that case as controlling for the reason that there existed an additional unknown element not present in the case under consideration, the jury did not know the figures upon which it was voting. Here each juror accepted one of the two known figures as his first choice and, by way of compromise and for the sake of coming to an agreement, agreed to accept the other as his verdict if it should be the first choice of the majority. To our minds there was no operation of any unknown force or unexplainable cause but an exercise of the judgment of each juror. Each juror by an act of conscious volition participated in the determination of the amount of the verdict even though he may have reached his decision by other methods than by weighing the evidence and may have based his judgment upon considerations other than his own opinion of the proper amount of damages to be awarded. The agreement which appellants attempted to show was not an agreement to resort to the determination of chance.

With regard to the second ground of appeal, we are satisfied that the disposition made by the District Court of Appeal is correct and we hereby adopt the following portion of its opinion as the opinion of this court.

"Appellant San Francisco Dairy Company makes the further contention that the evidence was insufficient to sustain the judgment against it. In our opinion this contention is without merit. It is based solely upon the claim that there was no evidence to show that appellant Vogel was the agent or employee of appellant San Francisco Dairy Company or that he was acting within the scope

of his employment at the time of the accident. It may be noted that the name of appellant San Francisco Dairy Company indicated that said company was engaged in the dairy business. The truck in question was a milk truck which had been regularly used by Vogel for some time for the purpose of delivering milk over his route. His testimony relating to the time of the accident was 'I was driving on my route.' The truck bore signs on both sides thereof with the name 'San Francisco Dairy Company' thereon. It was kept with many other similar trucks bearing similar signs at the place where appellant San Francisco Dairy Company maintained its office. At this place the names 'San Francisco Dairy Company' and 'Riverdale Dairy Company' appeared at the entrance. Vogel reported there each morning, started from there on his route with said truck and returned there at the end of the day. There was other testimony in the nature of hearsay evidence relating to the ownership of the truck and the employment of Vogel, but the parties are not agreed upon whether this particular testimony is available to respondent on this issue. We need not discuss this question, for we believe that the testimony above mentioned amply supported the inference that Vogel was acting for appellant San Francisco Dairy Company at the time the accident occurred. (*Hartig* v. *American Ice Co.*, 290 Pa. 21 [137 Atl. 867] ; *Holzheimer* v. *Lit Bros.*, 262 Pa. 150 [105 Atl. 73] ; *Williams* v. *Ludwig Floral Co.*, 252 Pa. 140 [97 Atl. 206] ; *Klusman* v. *Harper*, (Mo. App.) [298 S. W. 121] ; *Mann* v. *Stewart Sand Co.*, 211 Mo. App. 256 [243 S. W. 406] ; *Fleischman* v. *Polar Wave Ice & Fuel Co.*, 148 Mo. App. 117 [127 S. W. 660] ; *Robeson* v. *Greyhound Lines*, 257 Ill. App. 278; *Breen* v. *Dedham Water Co.*, 241 Mass. 217 [135 N. E. 130] ; Berry on Automobiles, 6th ed., sec. 1360.) The appellant corporation calls our attention to Vogel's testimony to the effect that he was not working for appellant San Francisco Dairy Company, but for the Dairy Delivery Company. They also refer to the evidence to the effect that the truck was not owned by the appellant San Francisco Dairy Company, but by the Dairy Delivery Company and the further evidence that Vogel was paid by the last-named company. We believe, however, that such testimony merely created a conflict with other testimony to which reference has been made. Further-

more, the president of appellant San Francisco Dairy Company, who was also the president of the Dairy Delivery Company, made the following statement in explanation of his testimony: 'The San Francisco Dairy Company is a non-operating corporation. In other words, it is a part and subsidiary of the Dairy Delivery Company. The name of the San Francisco Dairy Company is used as a business name, and the corporation kept as is for that purpose, recognition of the name of the San Francisco Dairy.' He did not deny having made the statement that 'all these companies were one'. It further appeared that the vice-president of San Francisco Dairy Company was also the vice-president of the Dairy Delivery Company. The same situation existed with respect to the office of secretary. Upon all the testimony taken together, the only logical conclusion to be drawn was that appellant San Francisco Dairy Company was merely the *alter ego* of the Dairy Delivery Company. We are therefore of the opinion that the evidence was sufficient to sustain the verdict against appellant San Francisco Dairy Company.''

The third point raised by appellants is that the damages are excessive. The injuries for which they were awarded as compensation were a splintered fracture of the first metatarsal bone of the right foot, which is the bone extending from the base of the great toe up to the instep, deep abrasions and lacerations on the back of the right foot and nervous shock. The evidence as to the extent, seriousness and probable permanence of the injuries is sharply conflicting but, resolving every conflict in favor of the respondent and giving him the benefit of every inference that can reasonably be drawn in support of his claim, as we are bound to do in considering a question of this nature, we cannot say the damages are excessive. Plaintiff's mother and grandmother testified that he suffered great pain and discomfort, largely contributed to by the reaction from the anti-tetanus serum which he was given, and experienced severe nervous shock, that he was forced to wear a cast for three months and used crutches for four months. It is not disputed that the great toe of the right foot is dorsiflexed or bent up due to injuries of the nerves in that region or irritation of the nerves crushed in the scar on the back of the right foot and that there is some

limitation of movement of the toe. There is medical evidence in the record from which the jury might reasonably have concluded that the strength and usefulness of the foot are permanently impaired, that plaintiff is developing flat feet as a result of the injury to the right foot and the extra burden put on the left foot, or at least that an existing tendency to flat feet was aggravated by the injury, and that the flexion of the toe would probably be permanent and would interfere with any activity requiring the use of the feet, since it furnishes the main propulsive power of the foot. On this record it cannot be said that the award of $5,000 is so "grossly disproportionate to any reasonable limit of compensation warranted by the facts as to shock the sense of justice and raise at once a strong presumption that it is based on prejudice or passion rather than sober judgment", which must be the case before a reviewing court may set aside a verdict as excessive. (*Ware* v. *McPherson*, 213 Cal. 120 [1 Pac. (2d) 433]; *Hart* v. *Farris*, 218 Cal. 69, 77 [21 Pac. (2d) 432].) We are the less inclined to do so in a case such as the present where the jury and the trial judge, who denied a motion for a new trial on this ground among others, had before them demonstrative evidence of the injury to plaintiff's foot and the impairment of its function and were able to judge for themselves the extent to which it fell short of being a normal foot. Plaintiff was present in the court and was required to walk and run and jump. The medical witnesses used the foot itself to illustrate their testimony. These demonstrations were especially helpful in arriving at a conclusion on the facts.

The judgment is affirmed.

Rehearing denied.