[Civ. No. 12352. Second Appellate District, Division Two.—March 25, 1940.]

WARREN JUNGE, a Minor, etc., Respondent, v. MIDLAND COUNTIES PUBLIC SERVICE CORPORATION (a Corporation) et al., Appellants.

JOHN L. JUNGE, Respondent, v. MIDLAND COUNTIES PUBLIC SERVICE CORPORATION (a Corporation) et al., Appellants.

Thos. J. Straub, W. H. Spaulding, John J. Briare and F. H. Pearson for Appellants.

Roy V. Reppy and E. W. Cunningham, as *Amici Curiae*, on Behalf of Appellants.

Glikbarg, Wolf & Selig and A. H. Brazil for Respondents.

McCOMB, J.—From a judgment in favor of (a) plaintiff Warren Junge in the sum of $35,000 and (b) plaintiff John L. Junge, father of Warren Junge, in the sum of $10,000, after trial before a jury in an action to recover damages for personal injuries resulting from defendants' negligence, defendants appeal.

Viewing the evidence most favorable to plaintiffs (respondents), the essential facts are:

August 15, 1937, plaintiff Warren Junge, age 13, and his mother, who were living on a farm in San Luis Obispo County, arose about 6:00 A. M. Said plaintiff's mother found that there was no electricity in her home, whereupon she and her son left their house, climbed through a barbed wire fence and started to milk their cows. After four or five cows had been milked, they noticed that one of the power wires which came to their premises from the main transmission line had fallen and was lying across the wire fence through which they had climbed. They completed the milking of the cows, returned to their house and found that they were still without electricity. Plaintiff Warren Junge then telephoned to defendant McKie, the service man for defendant Midland Counties Public Service Corporation. Plaintiff Warren Junge and his mother again went outside and commenced picking carrots, at which time they noticed a grass fire along the wire fence. Plaintiff Warren Junge attempted to put out the fire while his mother went into their

home to call assistance. While engaged in attempting to extinguish the fire, plaintiff Warren Junge came into contact either with the fallen wire or the fence which had become energized by the fallen wire, which was one of two high voltage wires located on a pole situated on the premises on which plaintiff Warren Junge lived and which conveyed 11,000 volts of electricity. As a result he was rendered unconscious and severely burned.

Defendant McKie at 6:30 A. M. learning that the electricity was off on the circuit which supplied the residence in which plaintiff Warren Junge lived, left his home and traveled by automobile a distance of eight miles to a regulator station, where at 7:10 A. M. he found the automatic switch upon the circuit open, which he· immediately closed and which switch, through action of the automatic circuit breaker, reopened at 7:11 A. M. At 7:13 A. M. he reclosed the switch, energizing the circuit with 11,000 volts of electricity. At 7:14 A. M. the switch again opened.

Defendants rely for reversal of the judgment on these propositions:

*First: There is no substantial evidence to sustain a finding that defendants were in any way negligent.*

*Second: The trial court committed prejudicial error in excluding evidence that defendant McKie on closing the automatic switch twice was acting in accordance with the practice of the best managed concerns in the industry.*

*Third: The trial court committed prejudicial error in instructing the jury as follows:*

*"If you believe from the evidence that Warren Junge was injured by coming in contact with high voltage electricity without knowledge of the danger therefrom, the electric current for which was furnished by defendants, such fact, in the absence of explanation by the defendants, affords reasonable evidence of defendants' want of care and it then devolves upon defendants to show that the injuries resulting to Warren Junge from said electricity did not occur from any negligent act or acts on their part."*

*Fourth: The verdicts in favor of (a) plaintiff Warren Junge in the sum of $35,000 and (b) John L. Junge in the sum of $10,000 are excessive.*

The first proposition is untenable. The evidence disclosed that:

(a) At the time Mrs. Junge arose there was no electricity flowing into her home.

(b) At the time Mrs. Junge and her son finished milking the cows and climbed back through the wire fence and went into the house the grass had not as yet become ignited.

(c) At 7:10 A. M. defendant McKie closed the automatic switch which had opened, indicating there was trouble on the 11,000 volt electric circuit, a portion of which transversed the Junge premises. At 7:11 A. M. the switch reopened through the action of the automatic circuit breaker and at 7:13 said defendant reclosed the switch. At 7:14 the switch again opened.

(d) On leaving her home for the second time to pick carrots Mrs. Junge noticed that grass fires had started on her premises.

(e) Plaintiff Warren Junge, while endeavoring to put out the fires that had started was severely burned by coming in contact with either the wire fence or the fallen wire which had been energized by electricity.

(f) Witness Boyles, assistant manager of operations of the Southern California Edison Company, called on behalf of defendant, testified relative to the practice of his company on closing automatic switches which had opened: "On our system on the 2300 to 4000 volt circuit we reclose twice; *on 11,000 and 16,000 we reclose once.*" (Italics added.)

From the foregoing facts the jury were justified in finding that the high voltage wire had fallen before plaintiff Warren Junge and his mother first left their home on the morning of August 15, 1937 (fact [a], *supra*), that the reclosing of the automatic switch by defendant McKie caused the grass to catch on fire (facts [b] and [c], *supra*), that after the first closing of the switch causing the fire and before its closing the second time by defendant McKie, plaintiff Warren Junge started to put out the grass fire (facts [c] and [d], *supra*), and that it was negligent for defendant McKie to close the automatic switch the second time, since so doing was contrary to the practice of the best managed companies in the industry (facts [e] and [f], *supra*).

■ The second proposition is likewise untenable. Witness Boyles, who was assistant manager of operations of the Southern California Edison Company, was permitted to tes-

tify as to the practice of the Southern California Edison Company relative to the reclosing of automatic switches when opened by some interruption on the electric circuits. The witness Plummer also testified as to the practice of the Modesto Irrigation District relative to the closing of automatic circuit breakers, it being conceded that both of the aforementioned companies were among the best managed in the State of California.

 The third proposition is also untenable. Defendants urge that this instruction is vulnerable to these objections:

(1) It shifts to defendants the burden of proving that they were not negligent.

(2) The cause of the injury being established, the doctrine of *res ipsa loquitur* is inapplicable.

The first objection is without merit. In *Bergen* v. *Tulare County Power Co.*, 173 Cal. 709 [161 Pac. 269], the trial court in giving an instruction relative to the doctrine of *res ipsa loquitur* stated that, if plaintiff had established by a preponderance of evidence the death of her decedent, while he was exercising ordinary care, by an excessive and dangerous current furnished by defendant through the electric light wire, "it then devolved upon defendant to show that the excessive voltage was not due to its negligence".

In the case just cited our Supreme Court in passing upon the same objection as defendants make here held that the giving of the instruction was not erroneous, saying at page 720 with reference to the language of the instruction which we have quoted, "This did not unduly extend the doctrine *res ipsa loquitur* as appellant complains that it did."

In *Holt* v. *Yellow Cab Co.*, 124 Cal. App. 385 [12 Pac. (2d) 472], the trial court in giving an instruction upon the doctrine of *res ipsa loquitur* concluded the instruction with this statement, "When and if the plaintiff makes such proof, the burden of proof shifts to the defendants to show their freedom from negligence." The court in *Holt* v. *Yellow Cab Co., supra,* held that it was not error to thus instruct the jury, saying at page 390, " . . . the effect of such language . . . is not to shift the burden of proof of the entire case to the defendant, but merely to point out to the jury that where the presumption applies, the defendant must then meet the *prima facie* case with sufficient evidence to balance any presumption of negligence upon his part. . . . *The point here*

*raised by appellants has been frequently considered, and we think it must be taken as established that the use of such language is not reversible error,* where the rest of the instructions are proper.'' (Italics added.)

■ The second objection is likewise without merit. The giving of an instruction on the doctrine of *res ipsa loquitur,* even though such doctrine is inapplicable, is not prejudicial error where, as in the instant case, the jury has been properly instructed that the burden is on the plaintiff to prove by a preponderance of the evidence that the negligence of the defendant is the proximate cause of the injury, and there is substantial evidence of defendant's negligence. (*Gerdes* v. *Pacific Gas & Elec. Co.,* 219 Cal. 459, 471 [27 Pac. (2d) 365, 90 A. L. R. 1071] ; *Gonzalez* v. *Nichols,* 110 Cal. App. 738, 742 [294 Pac. 758].)

■ Defendants' fourth proposition is without merit. The law is established that the jury's verdict will not be set aside upon appeal on the ground that damages are excessive, unless the verdict is so outrageously excessive as to suggest, at first blush, passion, prejudice, or corruption. (*Corvin* v. *Hyatt,* 10 Cal. App. (2d) 107, 108 [51 Pac. (2d) 176].)

In the instant case the amount of the awards does not fall in this category.

(a) A mere examination of the injuries of plaintiff Warren Junge as shown in plaintiffs' exhibits 1 and 2 makes it clear that the award of $35,000 to him does not fall within the purview of the rule just stated. Nor does it fall within the purview of the rule of such cases as *Mondine* v. *Sarlin,* 11 Cal. (2d) 593 [81 Pac. (2d) 903], *Maede* v. *Oakland High School Dist.,* 212 Cal. 419 [298 Pac. 987], *Loeb* v. *Kimmerle,* 215 Cal. 143 [9 Pac. (2d) 199], and *Bellman* v. *San Francisco H. S. Dist.,* 11 Cal. (2d) 576 [81 Pac. (2d) 894]. The following photographs are plaintiffs' exhibits 1 and 2 above referred to:

(b) As to the plaintiff John L. Junge, father of Warren Junge, it is likewise clear that the verdict of $10,000 in his favor does not fall within the scope of the rule hereinbefore mentioned, since the evidence disclosed that the cost of hospitalization, plastic surgery, etc., for plaintiff Warren Junge amounted to $6,532, leaving $3,468 as compensation for the father's loss of his son's services over a period of two and one-half years, the period during which it is estimated that the injured plaintiff will be unable to work. This is certainly not such a sum as under the circumstances of this case would suggest passion or prejudice at first blush.

For the foregoing reasons the judgments are and each is affirmed.

Moore, P. J., concurred.

WOOD, J., Concurring.—I concur in the judgment. The trial court did not err in instructing the jury on the doctrine of *res ipsa loquitur*. Under this doctrine the burden of proof did not shift to defendants but required them to produce sufficient evidence to overcome the *prima facie* showing of negligence. To do this it was necessary for them to establish to the satisfaction of the jury that the line was properly constructed with adequate safety appliances and that it was operated and maintained with proper care. (*Manuel v. Pa-*

*cific Gas & Elec. Co.*, 134 Cal. App. 512 [25 Pac. (2d) 509] ; *Phillips* v. *Southern Cal. E. Co., Ltd.*, 23 Cal. App. (2d) 222 [72 Pac. (2d) 769].) It was the function of the jury to determine whether defendants presented sufficient evidence to offset the *prima facie* case created by the application of the *res ipsa loquitur* rule. (*Helms* v. *Pacific Gas & Elec. Co.*, 21 Cal. App. (2d) 711 [70 Pac. (2d) 247].)

The court did not err in sustaining objections to the hypothetical questions by which defendants sought to prove that the employee of defendant corporation acted in accordance with approved practice in reclosing the switch. The questions did not contain all of the elements shown to be present at the time of the accident. Moreover, the witnesses in describing the practices followed by the companies by which they were employed in effect answered the questions to which objections were sustained.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 15, 1940, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 25, 1940.