[L. A. No. 20783. In Bank. Feb. 28, 1949.]

JACK GORDON, Respondent, v. AZTEC BREWING COMPANY (a Corporation), Appellant.

Eugene S. Ives and Schell & Delamer for Appellant.

Mitchell & Gold, Samuel A. Rosenthal and Leonard G. Ratner for Respondent.

SHENK, J.—This is an action arising out of injuries suffered when a bottle of beer exploded.

The plaintiff operated a café in the city of Los Angeles. He was transferring a bottle of ABC beer, a product of the defendant, from its case to an icebox in his café when the bottle exploded in his hand, resulting in blindness in his right eye. The defendant was the bottler. From a judgment on a verdict in favor of the plaintiff the defendant appeals.

The first question to be determined is whether on the facts presented the plaintiff was entitled to an instruction on the

doctrine of res ipsa loquitur; and if so whether the particular instruction given by the trial court was prejudicially erroneous.

In *Escola* v. *Coca Cola Bottling Co.*, 24 Cal.2d 453 [150 P.2d 436], it was pointed out that a sound bottle of carbonated liquid does not ordinarily explode if it is carefully handled. ■ Where a bottle containing liquid under pressure does explode causing injury the plaintiff is entitled to the benefit of the doctrine of res ipsa loquitur to supply an inference that the bottler was negligent, either in excessively charging the liquid or in failing to discover a flaw in the bottle, if it is probable under the evidence that the defendant was negligent in either respect.

■ Here there was evidence tending to show the defendant negligent in failing to make any of the standard tests for the detection of flaws in the bottles it distributed. New and used bottles were subjected only to a pasteurization process designed primarily to arrest fermentation, not to reveal weaknesses. An expert having long experience in the manufacture of glass and glass bottles testified that the pasteurization process was not a satisfactory test for strains, thin walls or small stones in the glass. He stated that manufacturers ordinarily subject bottles to three tests, the polariscope test, the hammer test, and the hot and cold plunge test. These tests if properly made were said to disclose all defects. None was utilized by the defendant. There was no showing that their use would have been impracticable or the cost prohibitive. The defendant's duty to make such tests is emphasized by the fact that bottles of its beer were known to explode during pasteurization and afterward during transportation. A sufficiently satisfactory showing of probable negligence on the part of the defendant was therefore made to warrant an instruction on res ipsa loquitur.

■ The doctrine may be applied, however, only where the instrumentality causing the injury was subject to the control of the defendant. In the Escola case this court rejected the contention that the instrumentality must have been in the possession of the defendant at the time of the accident. It was there stated: "Many authorities state that the happening of the accident does not speak for itself where it took place some time after defendant had relinquished control of the instrumentality causing the injury. Under the more logical view, however, the doctrine may be applied upon the theory that defendant had control at the time of the alleged negligent

act, although not at the time of the accident, *provided* plaintiff first prove that the condition of the instrumentality had not been changed after it left the defendant's possession.'' While the Escola case differs from the present case in that there the defendant bottler had itself delivered the faulty bottle to the plaintiff's employer the principles laid down govern the case here. It was then declared that a plaintiff may rely on the doctrine of res ipsa loquitur ''if there is evidence permitting a reasonable inference that it [the exploded bottle] was not accessible to extraneous harmful forces and that it was carefully handled by plaintiff or any third person who may have moved or touched it.'' (*Escola* v. *Coca Cola Bottling Co., supra,* 24 Cal.2d 453, 458.)

▇ Tracing the case containing the bottle which exploded from the defendant's plant to his hand the plaintiff introduced evidence to the effect that it suffered no damage at any stage of its transportation. The course of cases of ABC beer in August of 1944 when the accident occurred was as follows: The cases were loaded on trucks of the La Salle Trucking Company at the defendant's San Diego plant; La Salle drivers delivered them to a warehouse of the Associated Brewers Distributing Company in Los Angeles where they remained about three days; on August 22 the case which contained the bottle that exploded was delivered by an Associated driver to the plaintiff. Evidence was presented which showed that La Salle trucks were not involved in accidents during August, 1944; that no accidents occurred in the Associated warehouse that month which might have affected the beer; that the driver who delivered the case to the plaintiff was not involved in an accident en route and did not bump the case; that it was in excellent condition on delivery, and that the plaintiff handled the case and bottle carefully. While this evidence was not conclusive it was the jury's province to determine, after being properly instructed, whether the plaintiff had sufficiently proved the absence of intervening harmful forces after the defendant shipped the bottle to entitle the plaintiff to rely on an inference inherent in the doctrine that the defendant's lack of care was the proximate cause of his injury.

▇ But it is contended by the defendant that even if it be assumed that the doctrine of res ipsa loquitur was correctly invoked the court committed prejudical error in an instruction on the subject. The following instruction is claimed to be erroneous and to require a reversal: ''From

the happening of the accident involved in this case, as established by the evidence, there arises an inference that the proximate cause of the occurrence was some negligent conduct on the part of the defendant. That inference is a form of evidence, and if there is none other tending to overthrow it, or if the inference preponderates over contrary evidence, it warrants a verdict for the plaintiff. Therefore you should weigh any evidence tending to overcome that inference, bearing in mind that it is incumbent upon the defendant to rebut the inference by showing that it did, in fact, exercise ordinary care and diligence or that the accident occurred without being proximately caused by any failure of duty on its part." Standing alone this instruction was erroneous for it omitted reference to the fact that before the jury may accord the plaintiff the benefit of the res ipsa loquitur inference it must believe that the bottle did not suffer damage at the hands of persons other than the defendant.

In determining the propriety of an instruction the reviewing court should examine the charge as a whole. (*Wells* v. *Lloyd,* 21 Cal.2d 452, 458 [132 P.2d 471]; *Douglas* v. *Southern Pacific Ry. Co.,* 203 Cal. 390, 396 [264 P. 237].) If when considered together the instructions are found generally to state the applicable law, reversible error is not necessarily present even though an isolated instruction is defective in not containing all of the essential elements. (*Westover* v. *City of Los Angeles,* 20 Cal.2d 635, 637 [128 P.2d 350]; *Callet* v. *Alioto,* 210 Cal. 65, 70 [290 P. 438].)

After the above instruction was given, the court went on to charge: "The instruction just given may appear to constitute an exception to the general rule that the mere happening of an accident does not support an inference of negligence. The instruction, however, is based on a special doctrine of the law which may be applied only under special circumstances, they being as follows: First: the fact that some instrumentality, by which the injury to the plaintiff was proximately caused, was in the possession and under the exclusive control of the defendant at the time the cause of the injury was set in motion. . . . A defendant is deemed to have control at the time of the alleged negligent act although not at the time of the accident, provided plaintiff first proves that the condition of the instrumentality had not been changed after it left the defendant's possession. The defendant is not charged with the duty of showing that something happened to the bottle after it left its control and management. In

order to be entitled to the benefit of the doctrine of res ipsa loquitur, the plaintiff must show that every person who moved or touched the bottle after it left the control of the defendant, did so with due care, and that during said time the bottle was not accessible to extraneous harmful forces.''

Thus the broad instruction on res ipsa loquitur was followed by qualifying instructions explaining the circumstances which must be present before the inference of negligence can arise, including a charge that the plaintiff must prove that all who dealt with the bottle beside the defendant did so with due care. It is therefore apparent that taken together the entire charge on the subject fairly presented to the jury the element of careful handling and that the erroneous omission of that element from the general instruction was not prejudicial. (See *Westover* v. *City of Los Angeles, supra,* 20 Cal.2d 635, 637-39; *Juchert* v. *California Water Service Co.,* 16 Cal.2d 500, 513-15 [106 P.2d 886] ; *Barham* v. *Widing,* 210 Cal. 206, 216-18 [291 P. 173] ; *McChristian* v. *Popkin,* 75 Cal.App.2d 249, 257-58 [171 P.2d 85] ; *Barsha* v. *Metro-Goldwyn-Mayer,* 32 Cal.App.2d 556, 565 [90 P.2d 371].)

For still another reason the defendant's attempt to show reversible error must fail. Apart from instructions on res ipsa loquitur, instructions on general rules governing liability for negligence were given. The jury was instructed that the burden was upon the plaintiff to prove by a preponderance of evidence that the defendant was negligent and that his negligence was a proximate cause of the injury. There was present in this case a strong showing of negligence in the defendant's failure to test the bottles before distributing them to the public where they might cause harm if defective. There was also evidence to refute the possibility of intervening damage to the bottle. Under these circumstances the instruction on res ipsa loquitur, even if erroneous, did not result in a miscarriage of justice, for it is highly improbable that the jury found in the plaintiff's favor without concluding that the defendant was negligent and that the bottle was carefully handled after the defendant parted with it. (*Gerdes* v. *Pacific Gas & Electric Co.,* 219 Cal. 459, 471 [27 P.2d 365, 90 A.L.R. 1071] ; *Junge* v. *Midland Counties etc. Corp.,* 38 Cal. App.2d 154, 160 [100 P.2d 1073] ; *Gonzalez* v. *Nichols,* 110 Cal.App. 738, 741-42 [294 P. 758].)

This action was prosecuted against the defendant corporation only and it is contended that any cause of action for injuries resulting from defects in ABC beer bottles, which

arose on the date of plaintiff's injury should have been brought against the Aztec Brewing Company, a partnership, and not the Aztec Brewing Company, a corporation. It appears that the plaintiff did not learn the details of the defendant's structure and its relationship to the partnership until the action against the defendant corporation had proceeded to trial. When these facts were disclosed the plaintiff decided to proceed against the defendant corporation instead of the partnership on the theory that one was the *alter ego* of the other.

There is no conflict in the evidence on this question. The Aztec Brewing Company, a corporation, was organized in 1932 and thereafter engaged in the manufacture and sale of ABC beer. In March, 1944, the company's structure was changed to a partnership for tax reasons. All of the corporation's property was transferred to the partnership and the business continued as before, the partnership assuming without interruption the manufacturing, bottling and selling of ABC beer. The partners were the same persons as the stockholders in the corporation. They acquired and retained the same proportional interest in the partnership as they had had in the corporate stock. The president and vice-president of the corporation became general partners in the new partnership while the other former stockholders became limited partners. The name, Aztec Brewing Company, was retained and a license procured to sell beer under that name. The partnership continued to employ the same personnel and use the same manufacturing plant and offices. No changes were made in labels, packing cases, letterheads or invoices. The corporation was not dissolved, however, but remained in existence to collect debts owed it, continuing for a short time to use the offices of its successor. Checks of the corporation and partnership were differentiated by the addition of the words "corporation" or "a partnership" after the name, Aztec Brewing Company.

On the basis of these facts the trial court instructed the jury, "It has been established in this case that Aztec Brewing Company, a corporation, is the 'alter ego or other self' of the Aztec Brewing Company, a copartnership. Therefore, if one is liable, both are liable." A verdict in the plaintiff's favor was returned against the corporation and partnership and a judgment entered against both.

The defendant contends that the relationship of *alter ego* was not established as a matter of law and that the instruction to that effect was improper. A similar case was decided by

the Supreme Court of the State of Washington in *Associated Oil Co.* v. *Seiberling Rubber Co.*, 172 Wash. 204 [19 P.2d 940]. Suit was brought against the Seiberling Rubber Company, an Ohio corporation, to recover on a guaranty alleged to have been executed by the defendant. In the written guaranty, the guarantor was described as Seiberling Rubber Company, a Delaware corporation, and the guaranty was signed "Seiberling Rubber Company." After the answer was filed the plaintiff discovered for the first time that there were two corporations closely allied, the defendant Ohio corporation, and a Delaware corporation having the same name. It was found that the Delaware corporation owned all the stock of the Ohio corporation, that their officers were identical, and that the business affairs of the two corporations were conducted from the same offices. Because of the similarity in names and commingling of business the Washington Supreme Court held that the plaintiff was entitled to treat the two corporations as a single entity, and thus recover from the defendant, although it had not signed the note, since the confusion of the two identities resulted in probable fraud upon third persons dealing with the corporations, whether or not actual fraud was intended. Related also to this case is our decision in *Marabito* v. *San Francisco Dairy Co.*, 1 Cal.2d 400 [35 P.2d 513], in which a truck bearing the name of the defendant San Francisco Dairy Company struck the plaintiff. It was urged that the evidence was insufficient to sustain a verdict against the defendant since it was merely a nonoperating subsidiary of the Dairy Delivery Company which carried on the business. The officers of both companies were the same. This court held that the only logical conclusion was that the San Francisco Dairy Company was the *alter ego* of the Dairy Delivery Company and that the evidence was sufficient to sustain the verdict against the San Francisco Dairy Company. Subsequently an order adding to the judgment the name of the Dairy Delivery Company as the real defendant was sustained. (*Marabito* v. *San Francisco Dairy Co.*, 8 Cal.App.2d 54 [47 P.2d 530].) That these decisions involve two corporations and not a corporation and partnership as in the case before us does not lessen their significance for the same principles apply.

The cases mentioned illustrate in a factual context similar to that before us the rule that where the recognition of the fiction of separate corporate existence would foster an injustice or further a fraud the courts will refuse to recognize it. (*Stark* v. *Coker*, 20 Cal.2d 839, 846 [129 P.2d 390]; *Puccetti*

v. *Girola*, 20 Cal.2d 574, 578 [128 P.2d 13]; *Shea* v. *Leonis*, 14 Cal.2d 666, 669 [96 P.2d 332].) It is not necessary that the plaintiff prove actual fraud. It is enough if the recognition of the two entities as separate would result in an injustice. (*Wenban Estate, Inc.* v. *Hewlett*, 193 Cal. 675, 698 [227 P. 723]; *Minifie* v. *Rowley*, 187 Cal. 481, 488 [202 P. 673].)

Here confusion would be promoted and an unjust result be accomplished if the maintenance of the two entities controlled by the same persons and having an identical name were permitted to frustrate a meritorious claim. Since the evidence on this question was not contradicted there was no issue of fact requiring submission to the jury and the trial court's determination that as a matter of law the corporate defendant was the *alter ego* of the partnership must be sustained.

It is contended by the defendant that the issue of whether there existed an *alter ego* relationship was not pleaded and was therefore not before the trial court. Defects in the complaint may be cured by allegations of the answer. (*Vaughn* v. *Jonas*, 31 Cal.2d 586, 603-04 [191 P.2d 432]; *Hartman Ranch Co.* v. *Associated Oil Co.*, 10 Cal.2d 232, 248-49 [73 P.2d 1163]; *Marr* v. *Postal Union Life Ins. Co.*, 40 Cal.App. 2d 673, 680-81 [105 P.2d 649].) In its answer the defendant denied that it was engaged in the business of bottling, selling and distributing ABC beer at any time mentioned in the complaint. The question of which entity manufactured the beer and was responsible for the safety of its containers, was thereby sufficiently raised. Furthermore, even if the pleadings were to be considered deficient in this respect, it is clear that the defendant has not been misled to its prejudice by any variance between pleadings and proof. (Code Civ. Proc., § 469.) From the beginning of the proceedings it was prepared to maintain, and did maintain throughout the trial, that the liabilities of the partnership could not be fastened upon the corporation.

The judgment is affirmed.

Gibson, C. J., Carter, J., Schauer, J., and Spence, J., concurred.

TRAYNOR, J.—I concur in the judgment.

It is my opinion that the evidence in this case does not warrant the application of the doctrine of res ipsa loquitur and that if defendant's liability is predicated on negligence

the instructions on res ipsa loquitur[1] are prejudicially erroneous even though there is evidence that would support the verdict independently of that doctrine.

The majority opinion justifies these instructions on the grounds that there was evidence of negligence on the part of defendant and enough evidence to warrant an inference that there was no change in the condition of the bottle after

---

[1]The jury was instructed as follows:

"From the happening of the accident involved in this case, as established by the evidence, there arises an inference that the proximate cause of the occurrence was some negligent conduct on the part of defendant. That inference is a form of evidence, and if there is none other tending to overthrow it, or if the inference preponderates over contrary evidence, it warrants a verdict for the plaintiff. Therefore, you should weigh any evidence tending to overcome that inference, bearing in mind that it is incumbent upon the defendant to rebut the inference by showing that it did, in fact, exercise ordinary care and diligence or that the accident occurred without being proximately caused by any failure of duty on its part.

"In making such a showing, it is not necessary for a defendant to overcome the inference by a preponderance of the evidence. Plaintiff's burden of proving negligence by a preponderance of the evidence is not changed by the rule just mentioned. It follows, therefore, that in order to hold the defendant liable, the inference of negligence must have greater weight, more convincing force in the mind of the jury, than the opposing explanation offered by the defendant.

"If such a preponderance in plaintiff's favor exists, then it must be found that some negligent conduct on the part of defendant was a proximate cause of the injury; but if it does not exist, if the evidence preponderates in defendant's favor, or if in the jury's mind there is an even balance as between the weight of the inference and the weight of the contrary explanation, neither having the more convincing force, then the verdict must be for the defendant.

"The instruction just given may appear to constitute an exception to the general rule that the mere happening of an accident does not support an inference of negligence. The instruction, however, is based on a special doctrine of the law which may be applied only under special circumstances, they being as follows:

"First: The fact that some certain instrumentality, by which injury to the plaintiff was proximately caused, was in the possession and under the exclusive control of the defendant at the time the cause of injury was set in motion, it appearing on the face of the event that the injury was caused by some act or omission incident to defendant's management.

"Second: The fact that the accident was one of such nature as does not happen in the ordinary course of things, if those who have control of the instrumentality use ordinary care. . . .

"A defendant is deemed to have had control of an instrumentality where it had control at the time of the alleged negligent act although not at the time of the accident, provided plaintiff first proves that the condition of the instrumentality had not been changed after it left defendant's possession.

"The defendant is not charged with the duty of showing that something happened to the bottle after it left its control and management. In order to be entitled to the benefit of the doctrine of res ipsa loquitur, the plaintiff must show that every person who moved or touched the bottle after it left the control of defendant, did so with due care, and that during said time the bottle was not accessible to extraneous harmful forces."

defendant relinquished control of it. In my opinion the instructions cannot be justified on either ground.

In support of the first ground the majority opinion adduces the evidence that defendant did not apply the standard tests used by bottle manufacturers to ascertain if bottles are free of defects, together with the evidence that bottles frequently broke at the brewery and during their transportation thereafter. The majority opinion thus invokes evidence of defendant's conduct and the quality of his bottles to justify an instruction that negligence may be inferred, not from such evidence, but from the occurrence of the accident itself. The application of the doctrine of res ipsa loquitur depends, however, on the nature of the accident and on whether defendant had exclusive control of the bottle at the time the cause of injury was set in motion. Evidence regarding defendant's bottling procedure is immaterial since the inferences are to be drawn solely from the occurrence of the accident and defendant's control; if the doctrine of res ipsa loquitur is not already applicable such evidence does not render it so.

In support of the contention that the bottle was carefully handled and was not accessible to any extraneous harmful forces after leaving the brewery, plaintiff introduced evidence that the truck that carried the beer to Los Angeles had not been in any accident, that the manager of the company that distributed the beer did not know of any accident in the distributing company's warehouse, that the truck that delivered the beer to plaintiff had not been in any accident, that the man who delivered the beer to plaintiff handled the bottles carefully and observed that the cases appeared to be in excellent condition, and that the beer was handled carefully by plaintiff. The manager of the distributing company called as a witness for plaintiff, testified as follows:

"Q. During the time . . . [that the bottle was in the warehouse] were you aware of any accident occurring at your warehouse that affected these bottles of beer in any way? A. None whatsoever.

"Q. If there is any accident in your warehouse or in your plant which would cause breakage of bottles does that fact—do the men in your employ, do they bring this information to you? A. Well, they don't, not necessarily, because in handling bottled goods, merchandise like beer, if it is not handled properly it would cause breakage; in other words, if our men taking the beer off the stacks, off the conveyors,

and putting it in stacks, when they have to go up seven high or six high, in just loading it on there, they used too much force, the force inside would cause two bottles to bump against each other and the chances are a bottle would break.

"Q. All right, now then, when there is such breakage occurring do your men make reports of this breakage to you? A. No, not necessarily.

"Q. What happens when this breakage occurs; do you just simply stack that case aside? A. No, we put that case aside.

"Q. And do you salvage it? A. We salvage the goods or put in another bottle. If it is just one bottle we just take out the glass and put another full bottle in.

"Q. During . . . [the time that the bottle was in the warehouse] did you personally have any knowledge as to whether some of the cases had any broken bottles of beer in them, that is, the ABC cases? A. There isn't any time that there isn't a bottle or two broken to the case. There is always something broken on account of handling of it.

"Q. You mean handling it at your warehouse? A. Our warehouse, or handling it at the loading of the truck at the brewery, or it can happen anywhere."

The foregoing evidence regarding the handling of the bottle after it left defendant's brewery, fails to prove that the bottle was not subject to extraneous harmful forces; in fact it proves just the contrary. There is no indication that the handling that broke many bottles ["There isn't any time that there isn't a bottle or two broken to the case. There is always something broken on account of handling of it."] did not also weaken others enough to make them dangerous.

The doctrine of res ipsa loquitur is based on probabilities. The nature of the injury together with defendant's control must be such that reasonable men can conclude it is more probable than not that the cause of the injury was negligent conduct on the part of defendant. (*La Porte* v. *Houston, ante,* pp. 167, 169 [199 P.2d 665] ; *Honea* v. *City Dairy, Inc.,* 22 Cal.2d 614, 616-617 [140 P.2d 369] ; *Hinds* v. *Wheadon,* 19 Cal.2d 458, 461 [121 P.2d 724] ; see Prosser, Torts, p. 297.) Reasoning solely from the occurrence of the accident and the evidence of what happened to the bottle after it left defendant's control, one cannot conclude it is more probable than not that the bottle broke because of defendant's negligence, for it is at least as probable that the bottle broke because of handling by the distributor as that it broke because of some

defect existent when defendant relinquished control.[2]

The evidence that defendant did not test its bottles and that many broke or exploded at the brewery and during their transportation thereafter is sufficient to warrant a finding that defendant was negligently releasing dangerous and defective bottles on the market. The jury could reasonably conclude, therefore, that plaintiff's injury was caused by defendant's negligence in releasing such bottles. Nevertheless, the fact that there is some support for the verdict in the evidence

---

[2]The error of giving instructions on res ipsa loquitur was aggravated by the language of the instructions as is noted by the opinion of Presiding Justice Shinn for the District Court of Appeal, Second District, Division Three, which reversed the judgment in this case. "By this instruction the court withdrew from the jury two essential questions of fact, namely, whether plaintiff had established by his evidence that the bottle was probably not rendered unsafe while it was in the hands of other persons after it left possession of the defendant, and whether the defective or dangerous condition of the bottle would probably have been discovered by defendant in the exercise of ordinary care. . . .

"The first sentence of the questioned instruction [quoted in note 1, *supra*] can be interpreted only as a direction to the jury that, as a matter of law, under the facts as established by the evidence, the res ipsa loquitur inference of negligence was applicable to the defendant; and the succeeding two sentences limited the duty of the jury to weighing this inference against any contrary evidence. This instruction would have been proper only if the mere bursting of the bottle raised an inference that someone had been negligent, and also if it had been proved by clear and uncontradicted evidence that the bottle had been carefully handled by all persons who had possession of it, and that it was not exposed to injury, after it left the hands of the bottler. The bursting of the bottle did not raise an inference of negligence. However, in view of the uncontradicted testimony that the beer bottle was carefully handled by plaintiff, the explosion in itself justified an inference that, when delivered to plaintiff, the bottle was either defective or under excessive internal pressure, for, as said in the Escola case, 'sound and properly prepared bottles of carbonated liquids do not ordinarily explode when carefully handled.' (24 Cal.2d 453, 459 [150 P.2d 436].) As we have seen, the expert testimony was to be weighed with the evidence of the methods employed by defendant in determining whether the inference arose that defendant had been negligent. The instruction took this issue from the jury and was prejudicially erroneous.

"Moreover, whether this dangerous condition of the bottle developed while it was in possession of the defendant, rather than one of the intermediate parties who handled it, presented a question of fact as to the manner in which it was handled by these latter persons. We cannot say that the jury could not have reasonably found that the evidence was insufficient to prove that the bottle was carefully handled, and was not subjected to extraneous harmful forces after it left defendant's control. By taking this additional issue of fact from the jury, the foregoing instruction was again prejudicial to defendant.

"Plaintiff, however, refers to the established rule that in determining the propriety of instructions, they must be considered as a whole (*Crooks* v. *White*, 107 Cal.App. 304, 312 [290 P. 497]), and maintains that this additional error in the quoted instruction was cured by other instructions which followed it. The record shows that the court stated to the jury

independent of the doctrine of res ipsa loquitur does not render the erroneous instructions harmless. The effect of adding these instructions to those on the general rules governing liability for negligence is to offer the jury two alternative routes to a verdict for plaintiff. Under general instructions on negligence the jury must decide whether plaintiff has discharged his burden of proving that defendant was negligent and if so, whether that negligence was the cause of the injury. Under the res ipsa loquitur instructions the jury could conclude that this burden was discharged by an inference arising from the occurrence of the accident, even if they found that plaintiff's evidence of defendant's bottling procedure fell short of discharging plaintiff's burden of proving negligence. They were also presented with a very close question as to whether the bottle was defective when defendant relinquished control or developed a defect thereafter. Had it not been for the res ipsa loquitur instructions it is not improbable that they would have concluded that plaintiff had

that the inference of negligence referred to in the quoted instruction was applicable only under certain special circumstances, one of which was that the instrumentality causing the injury 'was in the possession and under the exclusive control of the defendant at the time the cause of the injury was set in motion.' The court then gave the following instructions: 'A defendant is deemed to have control of an instrumentality where it had control at the time of the alleged negligent act although not at the time of the accident, provided plaintiff first prove that the condition of the instrumentality had not been changed after it left the defendant's possession. The defendant is not charged with the duty of showing that something happened to the bottle after it left its control and management. In order to be entitled to the benefit of the doctrine of res ipsa loquitur, the plaintiff must show that every person who moved or touched the bottle after it left the control of the defendant, did so with due care, and that during said time the bottle was not accessible to extraneous harmful forces.' It is to be noted that nowhere in these later instructions did the court direct the jury that it must find the indicated facts to be true before the supposed inference of negligence might be applied to defendant. Plaintiff's contention that these later instructions did submit the issue of careful handling to the jury is an insufficient answer, for so construed, they would be in direct conflict with the previous instruction which, as we·have seen, took that issue from the jury. It is well settled that reversible error in the form of erroneous instructions cannot be cured by giving other correct instructions, where the effect is to create a clear conflict, and it is impossible to determine which instructions governed the jury's determination. (*Wright* v. *Sniffen*, 80 Cal.App.2d 358, 363 [181 P.2d 675]; *Ross* v. *Baldwin*, 44 Cal. App.2d 433, 436 [112 P.2d 666]; *Akers* v. *Cowan*, 26 Cal.App.2d 694, 699 [180 P.2d 143].) The two sets of instructions ·may be reconciled, but only on the theory that the court was informing the jury that, as a matter of law, the prerequisite fact of subsequent careful handling after the bottle left defendant's control, had been conclusively established. Under this view, the additional error in the original instruction was clearly not cured by the later instructions, but was actually emphasized and further impressed upon the minds of the jury.''

not discharged his burden of proving that defendant's negligence was the cause of the injury.

Whether the giving of instructions on res ipsa loquitur when that doctrine is not applicable is prejudicial, if the evidence is sufficient to support the verdict independently of the doctrine, depends on the particular facts of the case. In *Gerdes* v. *Pacific Gas & Electric Co.*, 219 Cal. 459 [27 P.2d 365, 90 A.L.R. 1071], the only issue was whether defendant was negligent in not repairing a broken gas line or shutting off the gas with sufficient promptness after being informed of a cave-in affecting its pipes. The court held that the giving of a res ipsa loquitur instruction was not prejudicial because it could not "be presumed that the jury may have believed that said company was free from negligence in this particular, but nevertheless returned a verdict against it, although the evidence as a matter of law clearly showed the company to be free from negligence in all other respects." (219 Cal. at 471.) The evidence was clear as to when defendant was notified of the cave-in, and there was no dispute that the injury was caused by an explosion of gas that escaped from defendant's line.

In *Gonzalez* v. *Nichols,* 110 Cal.App. 738 [294 P. 758], plaintiff's automobile collided with defendant's truck parked at night in a dip on the traveled part of the highway. The rear light of the truck was obscured. There was no dispute that the truck's position was a contributing cause of the accident, and the court held that in view of the exceptionally clear case of negligence the instruction on res ipsa loquitur did not lead to a miscarriage of justice.

In *Junge* v. *Midland Counties etc. Corp.,* 38 Cal.App.2d 154 [100 P.2d 1073], plaintiff was severely burned by contact with a fence on which defendant's high tension electric line had fallen. The break in the line had caused defendant's automatic circuit breaker to open, thus cutting off the power to the fallen line. Plaintiff was injured because defendant's service man had repeatedly reclosed the switch in an attempt to restore current through the line. The only issue was whether it was negligent to reclose the switch, and there was substantial evidence that to do so was contrary to the practice of well-managed power companies. The court held that in view of the evidence of negligence the instruction on res ipsa loquitur was not prejudicial.

In none of these cases was there any question as to what conduct on defendant's part caused the injury, and in all

of them there was substantial evidence that defendant was negligent in respect to that conduct. It is unlikely, therefore, that in any of them the jury would have found in favor of defendant on the issue of whether he was negligent in respect to such conduct and also found him liable by applying res ipsa loquitur. When, as in this case, however, there is doubt as to whether defendant's conduct caused the injury or whether it was negligent in any respect, the giving of instructions on res ipsa loquitur when that doctrine does not apply is prejudicially erroneous. (*Tower* v. *Humbolt Transit Co.*, 176 Cal. 602, 607 [169 P. 227] ; *Gritsch* v. *Pickwick Stages System*, 131 Cal.App. 774, 783-785 [22 P.2d 554] ; *Gray* v. *Los Angeles Ry. Corp.*, 69 Cal.App. 123, 125-126 [230 P. 970].)

By approving the res ipsa loquitur instructions given in this case, the majority opinion leaves it to the jury to hold defendant strictly liable not only for defects in its bottles when they leave its control but also for defects that develop in the normal course of marketing procedures. If such liability is to be imposed it should be imposed openly and not by spurious application of rules developed to determine the sufficiency of circumstantial evidence in negligence cases.

In *Escola* v. *Coca Cola Bottling Co.*. 24 Cal.2d 453 [150 P.2d 436], I concurred in the judgment on the ground that a manufacturer incurs an absolute liability when an article that he has placed on the market, knowing that it is to be used without inspection, proves to have a defect that causes injury to human beings. I regarded this liability as limited to injuries that could be traced to the product as it reached the market. There was abundant evidence in the Escola case that the bottle was defective at the time defendant delivered it to the restaurant where plaintiff was employed. In the present case the evidence shows that even though the bottle was exposed to extraneous harmful forces, it was subjected to no more than the usual wear and tear incident to normal marketing procedures and nothing unusual happened to it. Since, however, normal handling might have caused the defect, it cannot be inferred from the explosion alone that the bottle was defective when defendant relinquished control. It is therefore necessary to decide whether the bottler's strict liability extends not only to defects existing when he relinquishes control, but also to defects that arise as a result of normal handling thereafter. The facts of this case suggest that not uncommonly a plaintiff will be unable to trace the defect to

the bottler or to fix negligence on any of the persons through whose hands the bottle passes before reaching him.

From the time they are capped until they are opened bottles are subject to many hazards. They are bounced and bumped, joggled and jostled, as they are loaded, transported, unloaded, refrigerated, and carried from store to home. At any time along this hazardous course a bottle may become defective and thus a risk to those who handle it. The risk is one the consumer cannot reasonably be expected to anticipate or protect himself against. He does not ordinarily inspect bottles, and in any event it is not likely that he is qualified to detect latent defects. He accepts the bottle on faith. The explosion of bottles is not such a commonplace that those dealing with them ordinarily guard against that risk.

The reasons that make the bottler strictly liable for defects in his bottles when they leave his control extend his liability to defects that result from normal marketing procedures. ''Even if there is no negligence . . . public policy demands that responsibility be fixed wherever it will most effectively reduce the hazards to life and health inherent in defective products that reach the market. It is evident that the manufacturer can anticipate some hazards and guard against the recurrence of others, as the public cannot. Those who suffer injury from defective products are unprepared to meet its consequences. The cost of an injury and the loss of time or health may be an overwhelming misfortune to the person injured, and a needless one, for the risk of injury can be insured by the manufacturer and distributed among the public as a cost of doing business. It is to the public interest to discourage the marketing of products having defects that are a menace to the public. If such products nevertheless find their way into the market it is to the public interest to place the responsibility for whatever injury they may cause upon the manufacturer, who, even if he is not negligent in the manufacture of the product, is responsible for its reaching the market. However intermittently such injuries may occur and however haphazardly they may strike, the risk of their occurrence is a constant risk and a general one. Against such a risk there should be general and constant protection and the manufacturer is best situated to afford such protection.'' (Concurring opinion, *Escola* v. *Coca Cola Bottling Co.*, 24 Cal.2d 453, 462 [150 P.2d 436].)

The bottler's duty to the public is to provide a product that will safely withstand normal marketing procedures be-

fore it reaches the consumer. He must foresee the treatment to which his bottles will be exposed in normal handling, and if he has the responsibility for defects that arise therefrom, he will be impelled to select bottles that can withstand strain, to pack bottles in such a way as to minimize the chances of injury to them, and to select avenues for marketing so that they will reach the public in a safe condition. A bottle can hardly be considered not defective if it cannot safely withstand the treatment it will normally receive in carrying its contents to the consumer.

"In the food products cases the courts have resorted to various fictions to rationalize the extension of the manufacturer's warranty to the consumer: that a warranty runs with the chattel; that the cause of action of the dealer is assigned to the consumer; that the consumer is a third party beneficiary of the manufacturer's contract with the dealer. They have also held the manufacturer liable on a mere fiction of negligence. . . ." (Concurring opinion, *Escola* v. *Coca Cola Bottling Co.,* 24 Cal.2d 453, 465-466 [150 P.2d 436].) Similarly many courts that have not openly made the bottler strictly liable have coupled with the doctrine of res ipsa loquitur a fiction that the plaintiff has proved, or at the trial will be able to prove, that the condition of the bottle did not change from the time it left the bottler until it exploded, with the object of fixing liability upon the bottler. (See, e. g., *Payne* v. *Rome Coca-Cola Bottling Co.,* 10 Ga.App. 762 [73 S.E. 1087, 1088]; *Ortego* v. *Nehi Bottling Works,* 199 La. 599, 605-606 [6 So.2d 677]; *Stolle* v. *Anheuser-Busch,* 307 Mo. 520, 529 [271 S.W. 497, 39 A.L.R. 1001]; *Benkendorfer* v. *Garrett,* (Tex.Civ.App.), 143 S.W.2d 1020, 1023; *MacPherson* v. *Canada Dry Ginger Ale, Inc.,* 129 N.J.L. 365, 366 [29 A.2d 868]; *Macres* v. *Coca-Cola Bottling Co.,* 290 Mich. 567, 576-577 [287 N.W. 922]; *cf., Escola* v. *Coca Cola Bottling Co.,* 24 Cal.2d 453, 458 [150 P.2d 436]; *Hoffing* v. *Coca-Cola Bottling Co.,* 87 Cal.App.2d 371, 375 [197 P.2d 56].) These decisions tacitly recognize that public policy demands that the bottler's responsibility must be measured in terms of the normal risks attendant upon the handling of bottled beverages. "These bottled beverages, containing explosive gases, are put upon the market with the intention that they will be transported throughout the country and sold to consumers for the profit of the manufacturer. Obviously this should be at his risk. Public policy requires that the manufacturer should assume the risks and hazards of explosion incident to

the reasonable and ordinarily careful handling of these goods in the usual course of business. . . . It is fair to the manufacturer, and will afford the consumer of the beverage and those handling it in the ordinary course of trade reasonable protection, while the contrary rule leaves them practically without redress.'' (*Stolle* v. *Anheuser-Busch, supra,* 307 Mo. 520, 529.)

In the Escola case the bottler was also the distributor so that it was possible to trace the defect directly to him. A bottler cannot shift the responsibility to provide a product that will be safe in the hands of the consumer by routing his products through others. ''The manufacturer's obligation to the consumer must keep pace with the changing relationship between them; it cannot be escaped because the marketing of a product has become so complicated as to require one or more intermediaries.'' (Concurring opinion, *Escola* v. *Coca Cola Bottling Co.,* 24 Cal.2d 453, 467-468 [150 P.2d 436].)

EDMONDS, J.—I concur in the conclusion of Mr. Justice Traynor that the instructions to the jury on the doctrine of res ipsa loquitur were prejudicially erroneous, but I do not agree with the rule of strict liability stated by him in *Escola* v. *Coca Cola Bottling Co.,* 24 Cal.2d 453 [150 P.2d 436], and now reiterated.

For these reasons, I would reverse the judgment.

Appellant's petition for a rehearing was denied March 28, 1949. Edmonds, J., voted for a rehearing.