[Civ. No. 23078.   Second Dist., Div. Three.   Dec. 31, 1958.]

PAN PACIFIC SASH AND DOOR COMPANY (a Corporation), Respondent, v. GREENDALE PARK, INC. (a Corporation) et al., Appellants.

654

Frederick L. Botsford and Gordon Stater for Appellants.

Adelman & Schwartz for Respondent.

PATROSSO, J. pro tem.*—This is an appeal by the defendants Greendale Park, Inc., and Ralmor Corporation from a judgment in favor of plaintiff in the principal sum of $12,535.96 plus interest on the sum of $16,271.41 from September 1, 1955.

The complaint is in two counts. The first seeks to foreclose a mechanic's lien for the value of sash doors, frames and jambs furnished by plaintiff pursuant to an agreement with defendant Ralmor and used in the construction of residences upon 100 lots in a tract of land owned by the defendant Greendale. The second cause of action is in the form of a common count for goods, wares and merchandise sold and delivered to the appellants. Prior to the trial the first count was dismissed and the case went to trial upon the second cause of action alone. Defendants filed separate answers to the second count. Defendant Greendale denied that it was indebted to the plaintiff in any sum. Ralmor, while admitting that it was indebted to plaintiff, pleaded a counterclaim in the sum of $3,735.45 for damage alleged to have been sustained by it as a result of defective material furnished by the plaintiff.

At the pretrial hearing which was held on May 16, 1957, plaintiff stated that, while not pleaded, plaintiff upon the trial would contend "that the ownership of stock in Ralmor Corporation and Greendale Park, Inc. is the same or substantially the same so as to constitute one corporation the alter ego of the other." In response counsel for the defendant stated that it would "object to the introduction of any evidence on the subject of alter ego on the ground that

*Assigned by Chairman of Judicial Council.

the complaint does not set forth facts sufficient to constitute a cause of action based on the alter ego principle.'' No request was then or later made by the plaintiff to amend its complaint and the action went to trial upon the second count of the original complaint on July 2, 1957. At the trial following the opening statement of counsel for the plaintiff, defendants' counsel stated that he would object to any evidence tending to establish that each of the defendants was the *alter ego* of the other, and thereafter objected to all evidence tending to establish this fact. All of these objections were overruled and evidence was received upon the basis of which the trial court made the following findings:

### VI

''That there is a unity of interest and ownership of both defendants Ralmor Corporation and Greendale Park, Inc.

### VII

''That the defendant Ralmor Corporation was and is merely an instrumentality through which the defendant Greendale Park, Inc. conducted its operations as a business convenience.

### VIII

''That both of said defendants are insolvent.

### IX

''That fraud and injustice would result unless both of said corporations were held equally responsible to plaintiff for plaintiff's claim.''

As its first ground for reversal of the judgment Greendale contends that the trial court erred in admitting over its objection evidence designed to establish that it and Ralmor were the *alter ego* of each other upon the ground that such evidence was outside of the issues made by the pleadings. While it is true that the complaint is devoid of any allegation to this effect it now appears to be the established rule in this State that where a defendant is charged with liability his denial thereof is sufficient to authorize the reception of evidence to establish such liability upon the principle of the *alter ego* or at least that under circumstances such as here present the reception of such evidence does not constitute reversible error. In *Gordon* v. *Aztec Brewing Co.* (1949), 33 Cal.2d 514 [203 P.2d 522], the court in answering a similar contention to that advanced here by the appellants said (p. 523):

''It is contended by the defendant that the issue of whether

there existed an *alter ego* relationship was not pleaded and was therefore not before the trial court. Defects in the complaint may be cured by allegations of the answer. (*Vaughn* v. *Jones*, 31 Cal.2d 586, 603-604 [191 P.2d 432] ; *Hartman Ranch Co.* v. *Associated Oil Co.*, 10 Cal.2d 232, 248-249 [73 P.2d 1163] ; *Marr* v. *Postal Union Life Ins. Co.*, 40 Cal.App.2d 673, 680-681 [105 P.2d 649].) In its answer the defendant denied that it was engaged in the business of bottling, selling and distributing ABC beer at any time mentioned in the complaint. The question of which entity manufactured the beer and was responsible for the safety of its containers, was thereby sufficiently raised. Furthermore, even if the pleadings were to be considered deficient in this respect, it is clear that the defendant has not been misled to its prejudice by any variance between pleadings and proof. (Code Civ. Proc., § 469.) From the beginning of the proceedings it was prepared to maintain, and did maintain throughout the trial, that the liabilities of the partnership could not be fastened upon the corporation."

Like language is to be found in *Wilson* v. *Nobell* (1953), 119 Cal.App.2d 341, 348 [259 P.2d 720], where it is said :

"Although there was no direct issue raised by the pleadings that the Nobell Research Foundation was the *alter ego* of Albert Nobell it was not prejudicial under the circumstances to admit evidence on that question. Both Nobell and the foundation were parties to the action and represented by the same counsel. Nobell was a principal witness and in possession of all the facts relative to the creation of the foundation and its relation to him. When it developed that Nobell was indebted to plaintiff; that he was 'broke' and that he had turned funds and contracts over to the foundation, it became important and proper to inquire into the relationship between Nobell and the foundation so that the corporation might not be used by him to commit either a fraud or an injustice. (*Gordon* v. *Aztec Brewing Co.*, *supra*, p. 520 [33 Cal.2d 514 (203 P.2d 522)] ; *Associated Oil Co.* v. *Seiberling Rubber Co.*, 172 Wash. 204 [19 P.2d 940] ; *Thomson* v. *L. C. Roney & Co.*, *supra* [112 Cal.App.2d 420 (246 P.2d 1017)] ; *Mirabito* v. *San Francisco Dairy Co.*, *supra* [1 Cal.2d 400 (35 P.2d 513)]."

■ Here as in the cases cited, the defendants were apprised well in advance of the trial that the plaintiff intended to rely upon the doctrine of the *alter ego* in order to charge Greendale; both corporations were parties to the action and represented by the same counsel and the officers and principal

stockholders of both corporations who were in possession of all of the facts relative to the creation of both corporations and their relations and transactions with each other testified upon the trial. Under these circumstances conceding that the plaintiff's complaint was deficient in the particular above referred to, it may not be said that defendants were misled to their prejudice by any variance between the pleading and the proof.

▮ Greendale next contends that the evidence is insufficient to support the trial court's findings hereinabove quoted to the effect that Ralmor was the *alter ego* of Greendale. The evidence upon this score may be epitomized as follows:

Ralmor was incorporated in 1951, its sole stockholders being R. L. Blink and his wife and M. S. Hoffberg and his wife, each owning 50 shares of stock which had been issued at its par value of $1.00 per share. The same parties composed its board of directors. Mr. Blink was at all times its president and treasurer and Mr. Hoffberg was at all times its vice-president and secretary. Greendale was incorporated in August 1954. Its sole stockholders consisted of Mr. Hoffberg and Mr. Blink each owning 250 shares of stock which had been issued at its par value of $1.00 per share. Its board of directors consisted of Mr. Hoffberg and Mr. Blink and their attorney. The minutes disclose, however, that the latter was not present and did not participate in any meetings of the board of directors subsequent to September 13, 1954. Mr. Hoffberg was at all times its president and Mr. Blink was at all times its vice-president and secretary. The evidence justified the inference that Greendale was organized for the purpose of acquiring a tract of land in the Antelope Valley and building homes thereon. The property in question had been purchased by Messrs. Hoffberg and Blink and it was conveyed to the corporation subject to an encumbrance in the sum of $100,000 in consideration of the issuance by the corporation to Messrs. Hoffberg and Blink of its promissory note in the sum of $45,000. Both corporations' offices were located in the same premises and they had at least some employees in common.

After the transfer to Greendale of the tract of land previously mentioned and on January 20, 1955, Greendale entered into a building construction contract with Ralmor whereby the latter agreed to construct houses on the 100 lots in the tract at cost plus a fee of $500 per house. On the following day Greendale borrowed from the Bank of America $1,194,000 upon its note secured by a trust deed upon the land which

sum, under the agreement with the bank, was to be disbursed through an escrow as the construction of the houses on the property progressed. In connection with this loan Greendale, Ralmor, Mr. and Mrs. Blink and Mr. and Mrs. Hoffberg executed an agreement with the bank whereby they jointly and severally guaranteed the construction and completion of each house and the full and complete performance of all work required to be done by the plans and specifications and the payment in full for all labor and materials used in connection with said construction work and the completion of each of said houses free and clear of any and all mechanics' liens. Contemporaneous with the execution of the last mentioned agreement another agreement was executed between the bank and the same parties whereby the latter jointly and severally guaranteed to purchase from the bank for the unpaid principal balance plus accrued interest the loan upon any and all houses which had not been paid in full within nine months from the date thereof. Simultaneously Messrs. Greendale and Ralmor executed a written order to the bank wherein and whereby they authorized the bank to pay to Ralmor *or* Greendale the proceeds of the bank loan as the same was disbursed by it under the loan agreement.

Insofar as the record discloses the only business of the corporations during the period with which we are concerned was the construction of the houses upon the tract in question and the sale thereof. The financial records which were introduced in evidence disclosed numerous loans from Greendale to Ralmor and from Ralmor to Greendale. Both corporations appear to have operated largely on money borrowed from Messrs. Blink and Hoffberg and others including one Greendale who purchased $50,000 of Greendale debentures but under an agreement whereby Blink, Hoffberg and Ralmor agreed to repurchase the same for the principal amount upon Mr. Greendale's demand and they were later so purchased by Blink and Hoffberg. Each corporation was heavily indebted and unable to pay its obligations.

Upon the basis of the foregoing evidence the trial court was warranted in concluding, as it did, that each corporation was but an instrumentality or conduit of the other in the prosecution of a single venture namely, the construction and sale of houses upon the tract in question. Both corporations had the same stockholders, directors and officers, occupied the same premises as their offices and had common employees. Each was

without substantial capital. (*Cf. Automotriz etc. De California* v. *Resnick,* 47 Cal.2d 792, 796, 797 [306 P.2d 1].) When Greendale was without funds required for its operation and Ralmor had funds available a loan was made from the latter to the former and vice versa. Each corporation received the benefit of the materials supplied by the plaintiff and incorporated in the houses which were under construction upon the tract. There was such unity of interest and ownership that the separateness of the two corporations had in effect ceased and an adherence to the fiction of a separate existence of the two corporations would, under the circumstances here present, promote injustice and make it inequitable for Greendale to escape liability for an obligation incurred as much for its benefit as for Ralmor. ▮ As said in *Thomson* v. *L. C. Roney & Co.* (1952), 112 Cal.App.2d 420, 427-428 [246 P.2d 1017] : ''Where injustice would result from a strict adherence to the doctrine of separate corporate existence, a court will look behind the corporate structure to determine the identity of the party who should be charged with a corporation's liability. (*D. N. & E. Walter & Co.* v. *Zuckerman,* 214 Cal. 418, 420 [6 P.2d 251].) ▮ Since the separate personality of a corporation is but a statutory privilege it must not be employed as a cloak for the evasion of obligations. ▮ The conditions which must be present before the corporate veil will be pierced are outlined in *Minifie* v. *Rowley,* 187 Cal. 481, 487 [202 P. 673], where the court points out that before the obligations of a corporation can be regarded as those of another person, the following circumstances must appear : 'First, that the corporation is not only influenced and governed by that person, but that there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased; second, that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice.' The second requirement suggested in *Minifie* v. *Rowley, supra,* is further refined in the following expression: ' . . . where the recognition of the fiction of separate corporate existence would foster an injustice or further a fraud the courts will refuse to recognize it. (Citing cases.) It is not necessary that the plaintiff prove actual fraud. It is enough if the recognition of the two entities as separate would result in an injustice. (Citing cases.) Here confusion would be promoted and an unjust result be accom-

plished if the maintenance of the two entities controlled by the same persons and having an identical name were permitted to frustrate a meritorious claim.' (*Gordon* v. *Aztec Brewing Co.*, 33 Cal.2d 514, 522-523 [203 P.2d 522].)''

Finally appellants complain that the trial court erred in allowing interest upon the sum of $16,271.41 rather than on the sum of $12,535.96 for which judgment was awarded and with this contention we are constrained to agree. The arguments advanced by respondent in support of the trial court's action in this particular are (1) that the parties stipulated that plaintiff was entitled to interest from September 1, 1955, and (2) that the amount of appellants' offset in the sum of $3,573.45 ''was not established until the time of trial.'' ■ It is true that the parties stipulated that interest, if allowable, should commence to run from September 1, 1955, but this does not imply a stipulation that interest should be awarded upon a sum greater than that for which the court should award judgment. ■ The second argument is equally without merit for by virtue of the Code of Civil Procedure, section 440, where cross-demands exist between parties they ''shall be deemed compensated, so far as they equal each other.'' (See *Jones* v. *Mortimer* (1946), 28 Cal.2d 627, 632 [170 P.2d 893].) Thus to the extent that appellants had a right to offset against respondent's claim the amount of damage sustained by reason of the delivery of defective materials plaintiff's claim was satisfied. Appellants never owed plaintiff $16,271.41 but only $12,535.96 for which the court awarded judgment.

The judgment is modified by striking therefrom the words ''plus interest in the sum of $2,141.21'' and substituting in lieu thereof the following: ''together with interest at the rate of 7 per cent per annum from September 1, 1955.'' As so modified the judgment is affirmed, neither party to recover costs upon appeal.

Shinn, P. J., and Vallée, J., concurred.