[Civ. No. 24927. Second Dist., Div. Three. Nov. 15, 1961.]

PAUL C. McCOMBS, Plaintiff and Appellant, v. LOU RUDMAN et al., Defendants and Respondents.

Pray, Price & Williams for Plaintiff and Appellant.

Charles J. Katz and Samuel W. Blum for Defendants and Respondents.

SHINN, P. J.—Plaintiff Paul C. McCombs, doing business as Able Electric Company, entered into a contract with Len Construction Company, a corporation (called "Company"),

by which plaintiff agreed to do electrical work upon lots 1 to 154, inclusive, of Tract 15570 in the County of Los Angeles, at a price per unit which, with certain extra work, amounted to $35,674.69, all of which was paid by Len Construction Company except $8,082.85.[1]

After plaintiff had completed his work he recorded a mechanic's lien on the 154 lots in Tract 15570. The present action is against "Sam Len dba Len Construction Co., Inc., a corporation, et al., Lou Rudman, Sam Len, Bill Malat, Louis Lesser, Torrance View, a co-partnership and Torrance Vista, a co-partnership," for the recovery of the amount due plaintiff and for foreclosure on the mechanic's lien.

Len Construction Company filed a cross-complaint for damages against plaintiff. Findings and judgment for $8,082.85 were against the Company, alone, and foreclosure of the mechanic's lien was denied, as also was any recovery on the cross-complaint. Plaintiff appeals. The Company does not appeal.

Although plaintiff's contract was with the Company, he seeks to hold Len and all the other defendants liable under the doctrine of *alter ego*. By virtue of a pretrial order one issue to be tried was whether the Company was the *alter ego* of any or all of the defendants. The court found that as between the Company and defendants an *alter ego* relationship did not exist. The principal question on the appeal is whether there was evidence sufficient to support the finding that the relationship did not exist between the Company and any of the defendants.

We have concluded that the evidence was manifestly sufficient to support the finding that no *alter ego* relationship existed between the Company and any of the defendants, other than Sam Len, but that as between Len and his Construction Company the uncontradicted evidence established beyond question that the Company could not be recognized as an entity separate from Len himself, and that it was, in fact, a mere shell and instrumentality under and through which he conducted a construction business.

Louis Lesser Enterprises is a limited partnership in which Rudman, Malat and Lesser are the general partners. The individual defendants organized six corporations and these,

---

[1] First the parties entered into a contract for the construction on 89 houses on tract 15569 containing the statement "Option 154 houses on tract 15570 subject to tract going on record and necessary financing." By letter the agreement was extended to cover 155 houses on tract 15570 and the word "option" was stricken from the original agreement.

in turn, formed a partnership, Torrance View. The six corporations purchased 89 lots in Tract 15569, each of the five corporations taking title to 15 lots and the sixth corporation taking title to 14 lots. The six corporations also formed a partnership, Torrance Vista, which took title to 155 lots in Tract 15570. All plans had been made, and financing arranged, for the construction of houses on the lots before Len or Len Construction Company entered into any business transactions with any of the other defendants. Early in 1955, Torrance View, and later Torrance Vista, entered into contracts with the Company for the erection of 87 houses in Tract 15569 and 155 houses in Tract 15570. The contract price was cost, plus a fee of $200 per house. Only the work in Tract 15570 is presently involved. Later on Len individually purchased stock in the six corporations as an investment, and he ultimately became the owner of 37½ per cent of the stock.

The construction contract was the first business transaction entered into by the Company and any of the defendants.

There was no evidence of any partnership relationship between Len, Rudman, Malat or Lesser, nor any evidence that the activities of Torrance Vista or Torrance View were conducted as a joint venture of Len and the other defendants.

The Company had been in the construction business since 1949; Len testified he was the sole stockholder. None of the other defendants ever served as an officer, employee or agent of the Company; none of them ever had any part in its management or the conduct of its affairs, nor any relationship with it other than that which resulted from the construction contracts between the Company and Torrance View and Torrance Vista. The defendants, other than Len, had no interest in the property or earnings of the Company. The contention that an *alter ego* relationship existed between the Company and the defendants, other than Len, finds no support whatever in the evidence.

 Upon the other hand, one cannot read the extensive testimony of Len without becoming convinced that he and his Company were one and the same. Len testified that in addition to being the sole stockholder, he was the president, the general manager and "conducting the affairs of the corporation as the principal officer." He had been a licensed contractor before he organized the Company. He had construction work ready to turn over to the Company as soon as it was organized. Thereafter, all the construction business was carried on in the name of the corporation.

Len personally negotiated the contracts with plaintiff. The one for the construction on houses on Tract 15569 was signed by plaintiff and "Len Construction Company, Inc. by Sam Len, Contractor." The letter which called for the construction on houses on Tract 15570 was addressed to plaintiff and signed "Len Construction Company, Inc. by Sam Len." He did not bother to sign either agreement as president of the company.

Throughout Len's testimony, and on occasions too numerous to mention, Len spoke of himself and the Company as "*we*," "*we* were engaged," "*we* had a contract," "*we* entered into a contract just like *I* do in other contracts." Questioned as to Malat's connection with the construction of the houses Len answered "I was building this; Malat wasn't." Occasionally, he corrected himself to add that the Company was the one that was doing the work. On other occasions he was prompted by his attorney to make the same correction. We cannot doubt that upon these occasions there came to the mind of Len or of his attorney that two months before commencement of the trial of the present action a judgment had been rendered against both Len and the Company upon findings that the Company was his *alter ego*.[2]

In the present case, there was evidence that Len personally dealt with plaintiff from the negotiation of the contract until the work was finished. He regularly inspected the work. He drew a salary from the Company and devoted full time to its business. No extra work could be authorized without his personal approval. After the work was finished he personally negotiated with plaintiff over disputes which arose over the electrical work. So far as shown in the evidence there was no one else connected with the Company who would have been authorized to act for it. Except for the keeping of books and the work of the men in the field, responsibility for the operation of the Company rested upon Len alone. He and the Company had but a single office, and the same attorney. Len testified that he even took each day's outgoing mail of the Company and placed it in the mailbox in front of the office.

Upon the entire evidence it is clear that this is simply a case of a man with a going business who decided to operate

---

[2] In *Irey* v. *Len*, 191 Cal.App.2d 13 [12 Cal.Rptr. 403], the trial court had found upon Len's own testimony that the Company was a "mere shell not to be distinguished from Len himself," and the judgment against both was affirmed.

it through a corporation as a matter of convenience, who organized a corporation, acquired whatever stock was issued and thereafter carried on the same business in the corporate name exactly as he had conducted it as an individual.

On behalf of Len it is not contended, nor could it seriously be contended, that the Company was not used by Len as a mere instrumentality and vehicle for the conduct of his construction business. It is not questioned that complete control of the Company by Len was conclusively established. It is argued only that ownership of the stock by Len did not of itself create the *alter ego* relationship, which, of course, is true. But the manner in which the business was conducted as related would forbid recognizing Len and the Company as separate entities if to do so would result in an injustice to creditors.

The trial court had only to answer whether the Company was controlled and governed by Len to such an extent that the individuality or separateness of the two had ceased, and whether on the facts shown adherence to the fiction of separate existence would sanction fraud or promote injustice. (See *Pan Pacific Sash & Door Co.* v. *Greendale Park, Inc.*, 166 Cal.App.2d 652 [333 P.2d 802] and *Gordon* v. *Aztec Brewing Co.*, 33 Cal.2d 514 [203 P.2d 522].)

Since it was conclusively shown that Len was the sole owner of the Company and in complete and exclusive control of its affairs, the remaining question was whether an injustice would result from requiring plaintiff to look to the Company alone for payment of his judgment. It is sufficient to note that plaintiff recovered a judgment against the Company February 23, 1960, for the sum of $8,082.85, plus interest and costs, and that the same has not been paid. It is fair to assume that plaintiff has been unable to levy upon assets of the Company and that Len does not intend to permit the Company to pay the judgment. It would be unjust for plaintiff to be left with an uncollectible judgment, whether it would be because of the inability of the Company to pay or the manipulation of its affairs in such a manner as to make it "judgment proof." Although Len testified that the Company was never insolvent, it evidently carries no bank account in its own name. We note that when plaintiff's attorney asked of Len "You have had a number of subcontractors who worked at the time of this contract that you have been unable to pay, haven't you?" an objection was promptly made and

sustained. But whether failure to pay the judgment is due to the Company's liability or the manipulations of Len, to permit Len to escape liability would be to permit gross injustice, if not a legal fraud. [██] And it is the purpose and function of the *alter ego* doctrine to prevent injustice.

██ Plaintiff also contends that the court was in error in holding the mechanic's lien to be unenforceable. We cannot agree. When questioned by the court as to the contentions of the parties with respect to the lien, defendant's attorney stated that the lien was not filed in time or in the manner prescribed by law and that the action was not brought within the time prescribed by law. Plaintiff's attorney stated "We think it was good if Len Construction Company owned the property but they didn't." It was conceded that neither Len nor the Construction Company owned the property. It does not appear that the question whether the lien was good was litigated. Plaintiff's attorney must have had some good reason for not insisting on a judgment of foreclosure. Many of the houses had been sold, and that fact was well known to plaintiff. His lien was filed for the single sum of $8,082.85 against lots 1 to 154, inclusive, of Tract 15570. It stated a single date for completion of the entire work and no estimate of amounts chargeable against each of the 154 houses and lots. (Code Civ. Proc. §§ 1194.1, 1195.1.) None of the new owners was made a party defendant. The court properly denied a judgment of foreclosure.

The judgment in favor of defendants other than Sam Len is affirmed. The judgment in favor of Sam Len is reversed with directions to amend the findings and conclusions in accordance with the views herein expressed and enter judgment against Sam Len in the amount of the judgment previously entered against Len Construction Company, Inc.; defendants other than Len to recover costs against plaintiff; plaintiff to recover costs against Sam Len.

Vallée, J., and Ford, J., concurred.