[Civ. No. 26490.   Second Dist., Div. Three.   Aug. 27, 1963.]

R. BRUCE MURCHISON, Plaintiff and Appellant, v. ETHEL A. MURCHISON, Defendant and Respondent.

Murchison, Cumming, Baker & Velpmen, Henry F. Walker and John Baker for Plaintiff and Appellant.

William P. Mealey for Defendant and Respondent.

FILES, J.—This appeal is from an order denying a motion to quash execution and enter satisfaction of judgment in a divorce action. The question is whether the plaintiff, who paid an income tax deficiency after the divorce, was entitled to offset a part of it against the balance due defendant under the divorce judgment.

The record on appeal indicates that plaintiff obtained an interlocutory judgment of divorce against defendant on July 30, 1956. The final judgment was entered a year later. The interlocutory ordered plaintiff to pay defendant $300 per month beginning with July 1956 and continuing for 59 months. The judgment contained separate provisions for child custody and support. The judgment also contained these words: "The Court finds the property settlement agreement, dated June 26, 1956, between plaintiff and defendant is a fair and equitable distribution of the property of the parties and it is hereby approved." There was no other mention of property in the judgment. Nothing was said about whether there were debts, or if there were, who was to pay.

In December 1961 defendant filed in the superior court an affidavit stating that plaintiff had paid only $14,100 of the $17,700 which had been ordered paid, leaving a balance of $3,600 due, plus interest. Upon this affidavit a writ of execution was issued. Plaintiff then moved to quash execution and enter satisfaction of judgment. In support of this motion plaintiff filed a declaration showing the following facts which were not controverted and which for the purpose of this appeal are assumed to be true:

After the dissolution of the marriage the joint income tax returns of the parties for the years 1953, 1954, 1955 and 1956 were audited by the Internal Revenue Service with the result that the government claimed more than $20,000 as additional tax due for those years. An additional claim was asserted by the State of California based upon the federal government's audit. Plaintiff employed an attorney who negotiated a settlement with the federal and state governments. In June 1960 plaintiff paid to the Director of Internal Revenue $9,165.69 and to the State Franchise Tax Board $810.25 in full satisfaction of the joint tax liability of plaintiff and defendant. Plaintiff also paid in full the fees of the attorneys whom he had employed to handle the tax matters.

Plaintiff thereupon set off the $3,600 which remained un-

paid under the divorce judgment against defendant's share of the tax deficiency which plaintiff had paid.

Plaintiff's declaration also stated that when the parties had received notice of the tax claims, they had agreed that plaintiff would handle the matter for both of them and that defendant would reimburse him for one-half of any amount paid to the state and federal governments and one-half of the attorneys' fees. Defendant filed a counteraffidavit denying that any such agreement had been made. For the purpose of this appeal it is assumed that the trial court believed the affidavit of the prevailing party (defendant). We are bound by the implied finding that there was no agreement to share this burden.

The property settlement agreement, which had been received in evidence at the time of the divorce, was called to the attention of the court hearing the motion. The agreement was an integrated contract which expressed the desire of the parties to settle all rights and claims of each against the other "which may now exist or which may hereafter arise by reason of the marriage of the parties and their marital status to the date hereof. . . ." The agreement specified a division of property and contained the husband's promise to pay the wife $300 per month for five years. These payments were not designated as "alimony" or "support." The paragraph providing for the cash payments was headed "Concluding Property Distribution."[1]

There was in the agreement no mention of debts, nor any promise by either to discharge any existing debts except a mortgage on the home, which the husband agreed to pay.

The agreement contained the following language:

"Each of the parties hereto agrees that neither he or she will not, under any circumstances, ask any court in any proceedings for any allowance, support or maintenance or for further counsel fees or costs, or suit money or for any money or for any decree or order affecting the property rights of the parties hereto other than as provided and set forth in this agreement."

Notwithstanding the double negative in the quoted language, the parties are agreed that the purpose and effect of the clause is to prohibit further proceedings of the kind mentioned therein.

---

[1] In the paragraph of the interlocutory decree providing for the monthly payments, the words "for her support" appear in typewriting with an ink line through them. The judge's initials appear in the margin opposite the change.

Preliminarily, it should be noted that there is nothing in the record to indicate (a) that at the time the tax deficiency was asserted either party held any property which had been the common property of the parties during the marriage; (b) that either party was guilty of any fraud, or even negligence, in underpaying their income taxes; (c) that the amounts paid by plaintiff to settle the deficiency claims were not paid in good faith to compromise valid claims.

■ When husband and wife elect to file a joint income tax return they become jointly and severally liable for the entire tax payable upon the aggregate income. (Cal. Rev. & Tax. Code, § 18555; 26 U.S.C. § 6013 (d)(3); *Furnish* v. *Commissioner of Internal Revenue* (9th Cir.) 262 F.2d 727, 731.)

Under the circumstances shown here plaintiff was compelled by law to make a payment which benefited defendant in that defendant's tax liability was discharged.

■ Civil Code, section 1432, provides: ''A party to a joint, or joint and several obligation, who satisfies more than his share of the claim against all, may require a proportionate contribution from all the parties joined with him.''

، This rule applies even though there be no contract or agreement between the payer and the person benefited. (*Powell* v. *Powell*, 48 Cal. 234; *Hilton* v. *Young*, 73 Cal. 196 [14 P. 684].)

■ Although in some cases an agreement to make contribution may be implied, the doctrine, as it began in the courts of equity, is founded not upon consent but upon natural justice. The underlying idea is that it is just and equitable for the person benefited to pay his proportionate share. (See *Chipman* v. *Morrill*, 20 Cal. 130, 135; *Blankenhorn-Hunter-Dulin Co.* v. *Thayer*, 199 Cal. 90, 96 [247 P. 1088, 48 A.L.R. 797]; 18 C.J.S., Contribution, § 2; 13 Am.Jur., Contribution, § 4.)

■ Civil Code, section 1432, is consistent with the equitable origin of the doctrine in that its application is not limited to cases where consent, express or implied, can be found.

*Richter* v. *Henningsan*, 110 Cal. 530 [42 P. 1077], is an illustration of contribution enforced by a party who had paid a joint and several federal tax liability. The case holds that the action for contribution was not barred by the statute of limitations because the cause of action did not arise until one party had paid more than his share of the joint obligation.

■ It follows, from the application of these principles, that when plaintiff paid the full amount of the parties' joint and several tax obligations, a new claim or cause of action

arose by operation of law in his favor against defendant.[2]

■ Where cross-demands exist between two parties they are deemed compensated so far as they equal one another. (Code Civ. Proc., § 440.) This principle of setoff is not limited to judicial proceedings. The setoff applies between the parties to extinguish the debt even though no action is pending. (See *Jones* v. *Mortimer,* 28 Cal.2d 627, 632 [170 P.2d 893] ; *Pan Pacific Sash & Door Co.* v. *Greendale Park, Inc.,* 166 Cal.App. 2d 652, 660 [333 P.2d 802].) Thus in *Hauger* v. *Gates,* 42 Cal.2d 752 [269 P.2d 609], the court held that a sale under a trust deed could be set aside where it appeared that the note which the trust deed secured had been discharged by a setoff.

■ It follows that in the present case plaintiff's obligation to pay the $3,600 balance to defendant was extinguished when defendant became obligated to pay to plaintiff a greater sum as contribution for the tax deficiency. The effect was to compensate defendant just as though payment had been made to her in cash.

*Keck* v. *Keck,* 219 Cal. 316 [26 P.2d 300], is not inconsistent with this analysis. In that case the wife had acted as the husband's guardian, and upon the settlement of her accounts it had been determined that $1,896.26 was due from her to him, which sum she never paid. Subsequently in a divorce proceeding the court ordered the husband to pay the wife $100 per month alimony. Later the superior court made an order which in effect allowed the husband to offset the preexisting judgment debt against accrued alimony. The Supreme Court reversed that order. The opinion pointed out that a husband may be ordered to pay for the support of his wife notwithstanding that she is indebted to him; and that the alimony order, which did not mention her indebtedness, was in effect an order that the husband support her at the rate of $100 per month notwithstanding the preexisting indebtedness. A setoff under these circumstances would have had the effect of depriving the wife of her support at the rate which the court had found to be necessary and reasonable.

The *Keck* case involved an attempt to set off a preexisting debt against alimony. The present case involves neither a preexisting debt nor alimony. ■ The payments owed to the wife under the divorce judgment in this case were based

---

[2]Also of interest is the reasoning of the court in *Rutledge* v. *Rutledge,* 119 Cal.App.2d 114 [259 P.2d 79], where the former husband was held to be entitled to recover from his ex-wife the amount he was required to pay, after the divorce, to discharge the income tax lien on the common property which arose because of deficiencies on her separate returns.

upon an integrated property settlement and hence did not have the specially favored status of alimony. (*Bradley* v. *Superior Court,* 48 Cal.2d 509 [310 P.2d 634].) The installments payable to the wife were not the result of a court's determination of what she needed for her support, but were based upon a negotiated bargain whereby the parties had divided their property and discharged all other obligations then existing between them. In the present case the obligation of the wife to make contribution did not exist at the time of the divorce, and the antecedent tax liability was not known or suspected to exist. It could not be said here, as in *Keck,* that the divorce judgment was a determination that she should receive $300 per month free and clear of her then existing tax liability or free of any obligations which might arise against her in the future.

▪ Defendant has placed her reliance entirely upon the provision of the settlement agreement whereby each agrees that he or she will not ask any court for further relief. Strictly speaking, a setoff does not come within that language because the setoff operates without the necessity of maintaining a proceeding or asking a court for relief. Even the most liberal construction of the language of the agreement would not make it operate to prevent a money obligation from arising in the future by reason of a subsequent event not contemplated at the time of the agreement.

It cannot reasonably be said that the settlement agreement forbids the parties to invoke the aid of the court either to enforce the judgment or to order the entry of satisfaction under Code of Civil Procedure, section 675, when the judgment is in fact satisfied. In this case the record shows that the judgment has been satisfied, and plaintiff is entitled to have the writ of execution quashed and satisfaction entered.

The order is reversed.

Shinn, P. J., and Ford, J., concurred.

A petition for a rehearing was denied September 18, 1963.