253 So.2d 281 (1971)
Marguerite Louise CHAPPELL, Appellant,
v.
Ernest CHAPPELL, Appellee.
No. 70-994.
District Court of Appeal of Florida, Fourth District.
October 13, 1971.
*282 Robert Lee Saylor and Joseph D. Farish, Jr., of Farish & Farish, West Palm Beach, for appellant.
Alan R. Parlapiano and James L. Hegert, of Campbell, Colbath, Kapner & Bratten, West Palm Beach, for appellee.
WALDEN, Judge.
This is an appeal brought by a divorced wife from a post judgment order which allowed a setoff against alimony payments which were due to her from her former husband.
The parties were divorced in 1967. A property settlement agreement was incorporated therein. It provided, among other matters, for a weekly payment of $50.00 to the wife as alimony.[1]
After the divorce, the Internal Revenue Service assessed the parties for an income tax deficiency for 1965. A joint return had been filed for that year. The husband paid half the deficiency. The wife refused to contribute her half. Internal Revenue Service satisfied their demands by a seizure of the husband's bank account. The husband responded by suspending alimony payments to his wife, in effect creating his own setoff for half of the deficiency he claimed his wife was liable for. He was adjudged in contempt. He petitioned for an adjudication of contribution and setoff. The court allowed setoff of the income tax claim and directed that defendant husband be allowed a credit of $2,871.89 against any delinquent or future alimony payments.
The question of the efficacy of a setoff against alimony of a joint income tax liability is a matter of first impression in Florida. The lower court judge applied the rigid rules of contribution and setoff for coobligors. Florida has not before approved this approach in alimony situations. See Lopez v. Lopez, Fla. 1956, 90 So.2d 456, for an example of Florida's application of contribution for tenants by the entirety.
Generally alimony is predicated on two factors, the husband's ability to pay and *283 the wife's needs. These considerations are placed in a scale, precariously balanced and mixed with a dash of emotion and sentiment, to arrive at a fair sum for alimony. Naster v. Naster, Fla. 1964, 163 So.2d 264; Gordon v. Gordon, Fla.App. 1966, 192 So.2d 514.
Contribution is founded upon the equitable principle that no one shall be made to bear more than his share of any joint burden. 18 Am.Jur.2d, Contribution, § 4; 7 Fla.Jur., Contribution, § 2.
"The right of set-off is based on principles of right, justice, and benevolence. * * * Set-off contemplates the right existing between two parties to set off their debts by mutual deduction. It is not incompatible with the justice of plaintiff's claim but seeks to balance it in whole or in part by a counter obligation alleged to be due by plaintiff to defendant in another transaction. * * * Set-off does not require an equal balance.
* * * * * *
"The right of set-off is an exercisable right, and not a fixed or natural right conclusively established by the mere fact that each of the parties has a claim against the other; until the right is exercised, either party may do what he pleases with his property.
Set-off is an incident of judicial proceedings in which both parties become actors and is accomplished only by judicial action." 80 C.J.S. Set-off and Counterclaim § 3, Set-off in General. (Emphasis supplied.)
"* * * A court of equity, or a court possessing equitable jurisdiction, has inherent power, as a part of its general jurisdiction, to allow or compel a set-off. * * * As sometimes stated, the right of set-off is an equitable right or a creature of equity, and is founded on equitable principles. * * *
* * * * * *
"Set-off in equity is not a matter of right, but rests largely in the discretion of the court as defined by well-recognized equitable principles of universal application." (Emphasis supplied.) 80 C.J.S. Set-off and Counterclaim § 5, Equitable set-off.
In 47 Am.Jur., Set-off and Counterclaim, § 15, p. 718, it is put thusly: "The availability of setoff, counterclaim, or recoupment depends upon the nature of the original or principal action, the nature and status of the claim asserted, and the status or relationship of the parties involved in the litigation." 22 Fla.Law & Practice, p. 127, says equity has the power to allow or compel a setoff.
Contribution and alimony don't readily mix, as they are based on potentially conflicting public purposes  support of a wife versus fairness in joint business dealing.
The Internal Revenue Code, at Sec. 6013 (b) (3), Joint Returns, says that all liability on such returns with respect to the tax owed shall be joint and several. This means as far as they are concerned they don't care which spouse pays. They just want payment. Contribution is a private concern between the parties.
To be more specific with reference to the instant case, setoff against alimony payments is generally frowned upon. "The general rule is that it is the obligation of the divorced husband to pay the specified amounts according to the terms of the decree and he should not be permitted to vary these terms to suit his own convenience." Mixson v. Mixson, S.C. 1969, 171 S.E.2d 581. The court in that case refused to credit the husband's hospital payments and vacation trips for and with the children against the alimony he was obligated to pay.
Generally the test in determining what expenditures made by the husband should be credited toward alimony is whether the wife had the unrestricted right to determine how her alimony was disbursed. In other words, the husband can not just buy his ex-wife a new car and *284 claim he owed her no alimony for a year. That would violate the rule that alimony is for support and the recipient should have control over how she spends this support money. Van Morkhoven v. Kleiner, La. App. 1965, 180 So.2d 601. In our case the wife had no such control. The Van Morkhoven case was followed by Viser v. Viser, La. App. 1966, 186 So.2d 661, which held that a husband could not credit payment for expenditures made by his wife during marriage against his alimony. Alimony was for support and was based on need and ability.
New York put this general idea very well in Palmer v. Palmer, N.Y. 1966, 52 Misc.2d 610, 275 N.Y.S.2d 978, where it said,
"A husband may not set off against unpaid alimony and child support payable to his wife debts or claims owed him by her. * * * This rules applies with equal force to purchases or to payments made by the husband to third parties for the benefit of his wife or child for whose support a dollar amount was, as here, fixed in a matrimonial judgment or order * * *, at least without her prior consent that they be instead or on account of the amount fixed. Absent such consent payments of this character must be regarded in addition to, and not in lieu of, the support fixed by the court or, indeed, by a separation agreement. * * *" (Emphasis supplied.)
An Alabama case, Ryan v. Ryan, 1960, 271 Ala. 243, 123 So.2d 102, serves to fortify the views expressed by New York.
"* * * [A] claim of the husband for money had and received is not available as a setoff to satisfy or extinguish the decree for alimony, because to allow such a setoff would be to deprive the wife of her maintenance and support."
"* * * We do not consider that a decree for alimony in favor of the wife against the husband is a debt due from the husband to the wife within the meaning of this statute of setoff. The judgment or decree for alimony is duly imposed by law upon the husband to pay the amount of such alimony awarded for the support of the wife.
"Alimony is awarded upon considerations of equity and public policy. Since it is thus founded upon public policy and created in equity, it cannot be diverted from the purpose of support without public injury. * * * The courts which created this fund should see that it is not subjected to the payment of preexisting debts, whether claimed by the husband or by some third party."
"Lest we be misunderstood we point out that the mere existence of mutual and independent demands does not authorize an equity court to set them off against each other, unless the allegations of the bill show an intervening equity, which renders it necessary for the protection of the demand sought to be set off." (Emphasis supplied.)
Ryan v. Ryan, supra, is annotated in 100 A.L.R.2d 919. Various instances where setoffs were allowed or disallowed were mentioned therein.
Two states, New York and California, have analyzed our exact problem, a setoff of income taxes against alimony.
New York reached an interesting result in the recent case of Miller v. Miller, 1970, 62 Misc.2d 755, 310 N.Y.S.2d 18.
"* * * Apparently, under the circumstances herein, there were such items of indebtedness, namely, tax assessments, whether or not she had knowledge of the same. On that basis, therefore, since income tax liability is both joint and several, either party could have been held liable thereon. Therefore, I conclude that the plaintiff should be required to make a contribution in connection therewith, particularly since she had taxable income those years which contributed to the tax liability.

*285 "The reasoning and equity behind such conclusion is even more cogent when considered in the light of what would have been the legal situation in regard to the wife's right of contribution if she, in the first instance, had been the part (sic) against whom the tax authorities had made such deficiency tax assessments.
"The general rule is that one compelled to pay or satisfy the whole or bear more than his just share of a common burden or obligation upon which several persons are equally liable, or which they are bound to discharge, is entitled to contribution against the others to obtain from them payment of their respective shares.
* * * * * *
"However, in order to fairly apportion such additional tax assessment as between the parties hereto, I direct that there be a hearing by way of an assessment on the said counterclaim whereby the Court will, in addition to other relevant facts, ascertain the respective taxable income of the parties for each of the respective tax years in question and allocate the additional income tax liability based upon the pro rata percentage of contribution of each party to such total taxable income and make a proration of such assessment as between the parties." (Emphasis supplied.)
Miller contains a major difference from the case at hand. In Chappell the wife did not work. It was the husband's income, plus some capital gains from the sale of jointly owned property, which created the tax liability. The wife merely gave her perfunctory approval to the tax return by signing it. She relied on her husband. The argument that she received pecuniary benefits from her husband's income by way of support is not cogent. The husband has a common law and statutory obligation to support his family. Therefore, in our case a pro rata solution would be inapplicable.
California has a line of cases in this area beginning with Keck v. Keck, 1933, 219 Cal. 316, 26 P.2d 300. That case spoke in general terms of antecedent debts, not specifically income tax liability. The setting was the depression. The wife was destitute while the husband had $50,000. The wife was indebted to the husband but the court awarded her alimony of $100 per month. They said:
"The marital duty of a husband to support his wife is not suspended during the continuance of the marriage because the wife may be indebted to him. The obligation to pay alimony is founded on this duty, and is not an ordinary debt. * * * [T]he husband * * * may not as a matter of right offset his obligation to pay monthly alimony against the wife's debt to him, and thus relieve himself from making provision for her support. * * * The husband may not, in the manner of an ordinary judgment debtor, as a matter of right, and by motion (15 Cal.Jur. 275), have a judgment against him for alimony offset against a judgment in his favor against his wife.
* * * * * *
"We are inclined to the view that where a liberal support allowance suitable to the circumstances and financial condition of the parties is made, the court should have the right in a proper case to provide as a part of the decree that the husband may withhold a portion of the allowance each month in payment of his wife's indebtedness to him. But in the case herein the interlocutory decree contains no such provision, and hence its legal effect is to order Arthur W. Keck to pay $100 a month to his divorced wife in cash."
Zaragoza v. Zaragoza, 1941, 48 Cal. App.2d 27, 119 P.2d 162, came next in time. That case held that where debts were contracted during the marriage and it can't be determined with exactitude by whom, it can be assumed the husband was primarily liable.
*286 Murchison v. Murchison, 1963, 219 Cal. App.2d 600, 33 Cal. Rptr. 285, took the general law from Keck and Zaragoza and applied it to income tax liability. Murchison decided that the husband's satisfaction of deficiencies in joint income taxes satisfied his obligation to pay money under a divorce judgment.
"When husband and wife elect to file a joint income tax return they become jointly and severally liable for the entire tax payable upon the aggregate income." "* * * Although in some cases an agreement to make contribution may be implied, the doctrine, as it began in the courts of equity, is founded not upon consent but upon natural justice. The underlying idea is that it is just and equitable for the person benefited to pay his proportionate share."
"Keck v. Keck, 219 Cal. 316, 26 P.2d 300, is not inconsistent with this analysis. * * * The opinion pointed out that a husband may be ordered to pay for the support of his wife notwithstanding that she is indebted to him; and that the alimony order, which did not mention her indebtedness, was in effect an order that the husband support her at the rate of $100 per month notwithstanding the pre-existing indebtedness. A setoff under these circumstances would have had the effect of depriving the wife of her support at the rate which the court had found to be necessary and reasonable.
"The Keck case involved an attempt to set off a pre-existing debt against alimony. The present case involves neither a pre-existing debt nor alimony. The payments owe to the wife under the divorce judgment in this case were based upon an integrated property settlement and hence did not have the specially favored status of alimony. * * * The installments payable to the wife were not the result of a court's determination of what she needed for her support, but were based upon a negotiated bargain whereby the parties had divided their property and discharged all other obligations then existing between them. In the present case the obligation of the wife to make contribution did not exist at the time of the divorce, and the antecedent tax liability was not known or suspected to exist. It could not be said here, as in Keck, that the divorce judgment was a determination that she should receive $300 per month free and clear of her then existing tax liability or free of any obligations which might arise against her in the future."
Murchison is readily distinguishable from Chappell and other authorities presented because it did not involve alimony.
Van Diest v. Van Diest, 1968, 266 Cal. App.2d 541, 72 Cal. Rptr. 304, discusses both Keck and Murchison.
"In Murchison v. Murchison (1963) 219 Cal. App.2d 600, 33 Cal. Rptr. 285, a husband was allowed to set off sums paid by him to discharge an income tax liability (not known to exist at the time of the divorce) against payments due the wife under an integrated property settlement agreement. But, as the court there pointed out, the payments due to the wife under the agreement were not designated as being for her support but were in settlement of the mutual adjustment of the parties' economic relations inter se.
"In Keck v. Keck (1933) 219 Cal. 316, 26 P.2d 300, the wife, prior to the divorce proceeding, had become indebted to the husband for sums improperly diverted by her during a guardianship of the husband's estate. The divorce proceeding resulted in a support order in her favor and made no mention of the preexisting debt. The Supreme Court held that, under those circumstances, the husband was not entitled, as of right, to offset the pre-existing debt against the subsequent support order.
"However, in the case at bench, we need not decide which of those two cases, if either, was here applicable. Early in *287 the proceedings on remand, the parties entered into a stipulation * * *."
The last California case on this question is Williams v. Williams, 1970, 8 Cal. App.3d 636, 87 Cal. Rptr. 754. It concisely summarizes the California rule:
"Considering defendant's contention that his alimony obligation may be set off against plaintiff's indebtedness to him, we observe that it is well settled in this state that there can be no such offset. (Keck v. Keck, 219 Cal. 316, 320, 26 P.2d 300; Zaragoza v. Zaragoza, 48 Cal. App.2d 27, 28-29, 119 P.2d 162. The rationale behind such rule is that alimony is not an ordinary debt but a marital duty of the husband to support his wife. * * *
"Defendant's reliance on Murchison v. Murchison, 219 Cal. App.2d 600, 33 Cal. Rptr. 285, is misplaced. There, the husband was allowed to offset a monthly $300 payment to the wife under a property settlement agreement against taxes paid by the husband for the wife on the rationale that the monthly payment was a contractual obligation rather than alimony. (P. 605, 33 Cal. Rptr. 285.)" (Emphasis supplied.)
"Defendant also urges that his child support arrearages should be set off against plaintiff's debt to him. Although there is no California case dealing directly with the issue, it seems clear that the rationale of Keck and Zaragoza should apply. An order for child support, like alimony, is not an `ordinary debt' but rather a court-imposed obligation to provide for one's child."
What rule shall we formulate or use in Florida? We are impressed with the reasoning and rules suggested in the foregoing authorities and particularly the California rule. However, we feel that it should not be so absolute and unvarying as there suggested. We conceive that instances may occur where as a matter of equity and good conscience a setoff should be allowed to the husband against his alimony obligation for such taxes paid. To illustrate, but not to limit, support the tax debt was primarily in fact the consequence of taxes not paid during coveture upon the wife's separate earnings; and suppose further that the Internal Revenue Service seized the husband's business which was the source of his income and thereby destroyed the husband's ability to pay alimony and suppose further that the setoff would not unduly offset the wife's financial picture. Under these circumstances should not the trial court be authorized to permit a setoff? We think so.[2]
Thus, we advance the rule which we think preferable. It is that, in the absence of compelling equitable criteria and considerations to the contrary, a husband shall not be permitted to set off against his alimony obligation monies paid by him on account of a joint and several income tax liability.
Looking at the record in the instant case, it is devoid of any equitable showing which would bar the imposition of the mentioned rule.
Thus, that portion of the order here appealed which allowed the defendant a setoff based on income tax payments made by him is reversed.
Reversed.
MAGER, J., and MELVIN, WOODROW M., Associate Judge, concur.
NOTES
[1] The agreement provided further that each party released the other party from all claims. Here notice and knowledge of the income tax liability, hereafter mentioned, was received after the execution of the agreement and the divorce. There is no basis for believing that the parties knew of the claim or that it was within the contemplation of the parties at the time the agreement was made. This being the case the release proviso would not be operative in the settlement of the dispute as to the liability of the parties for the payment of the claim. See 28 Fla.Jur., Release, § 11, and Langbein v. Comerford, Fla.App. 1968, 215 So.2d 630.
[2] Parenthetically, we recognize in a proper case that the husband may be entitled to an alternative or secondary method of relief, depending, of course, on the severity of the income tax levy. He is entitled to apply to the court for modification of the alimony award based on a material change in his ability to pay same. Purcell v. Purcell, Fla.App. 1969, 223 So.2d 389; Chord v. Chord, Fla.App. 1968, 209 So.2d 281.