GRIFFIN, J.
Charles C. Moore, Jr. [“Former Husband”] appeals a final judgment of dissolution of marriage, asserting multiple errors. We find merit in only two. We agree that the trial court erred in determining the net income of Sandra L. Moore [“Former Wife”], and that the trial court also erred in setting off equitable distribution monies that Former Husband owed to Former Wife against Former Wife’s bridge-the-gap alimony obligation.
Former Husband asserts on appeal that the trial court erred in determining Former Wife’s net income by excluding sums of money paid by her into her 401 (k) and health savings account. Former Wife contends that her 401 (k) contributions were properly deducted as mandatory retirement payments.[1]
Section 61.30(3), Florida Statutes (2011), addresses the calculation of net income for purposes of child support:
Net income is obtained by subtracting allowable deductions from gross income. Allowable deductions shall include:
*196 (a) Federal, state, and local income tax deductions, adjusted for actual filing status and allowable dependents and income tax liabilities.
(b) Federal insurance contributions or self-employment tax.
(c) Mandatory union dues.
(d) Mandatory retirement payments.
(e) Health insurance payments, excluding payments for coverage of the minor child.
(f) Court-ordered support for other children which is actually paid.
(g) Spousal support paid pursuant to a court order from a previous marriage or the marriage before the court.
Prior to trial, the parties stipulated that Former Wife’s 2011 net income was $70,925.15, after federal tax, Medicare, disability, dental, health insurance, pretax medical, and 401(k) withholdings. Former Husband objected, however, that Former Wife’s contribution to her 401 (k) account and to her health savings account were not statutorily authorized allowable deductions from gross income for purposes of calculating her net income. In the final judgment, the trial court utilized the $70,925.15 figure to determine Former Wife’s net income.
During the trial, Former Wife testified regarding her 401(k) contributions and the money that she placed in a flexible spending account:
Q. Okay. Now, your — your 401(k) contributions for 2010 you have as — it was $6,921.75 that you were paying for your 401 (k) throughout that year; correct?
A. Yes.
Q. Okay. And you continue to contribute that much to your 401(k)?
A. I’ve made no changes in it. That— that’s right.
Q. And you also have—
THE COURT: Just because I’m not as familiar with the numbers as you guys are, if I’m not mistaken — I just want to understand — the contribution you made to your 401 (k), you get to designate that amount every year; correct?
THE WITNESS: Yes. You can change it.
THE COURT: All right.
THE WITNESS: Yes, sir, you can.
BY MR. MCCOURT:
[[Image here]]
Q. So the FSA is $1700?
A. Yes. That’s the — this is — that’s the flexible spending, is the 1700.
Q. Okay. And that’s — and the way that works is you tell your employer, hey, I want to put, say, two percent of my annual income into this particular account. It then goes into an account without being taxed; correct?
A. You pick a fixed dollar amount and you — if you — you know, you try to estimate what your out-of-pocket medical expenses will be. And at the end of the year, hopefully you have exhausted them, because if you haven’t exhausted them, then there’s nothing refunded to you. So you try to estimate it as best you can. That’s your, like, copayments and your copayments on your prescriptions—
Additionally, on direct examination by her counsel, Former Wife testified about her 401(k) contributions as follows:
Q. Okay. And with regard to your 401 (k), is there a certain minimum percentage that you have to contribute each month in order to maintain the 40100?
A. Four percent.
*197 Q. So in that sense, even though it’s voluntary, it’s mandatory to enable—in order to be able to maintain it?
A. Yeah. Uh-huh. Yeah. To get the employer contribution. Yes.
Based on this testimony, it is apparent that neither the 401 (k) contribution nor the health savings account qualifies as an authorized deduction for calculation of net income under section 61.30(3), Florida Statutes (2011). See Geoghegan v. Geoghegan, 969 So.2d 482, 486 (Fla. 5th DCA 2007) (“[T]here [was] no indication that the trial court considered including the income earned by the Husband that was annually contributed by him to his 401K plan, SERP account, or medical saving account in the calculation of the Husband’s income,” and that “[a]s these payments [were] voluntary contributions (albeit for valid and beneficial purposes) on the part of the Husband, and as they reduce the apparent annual income available to the Husband, they should have been considered by the trial court in making the ability-to-pay alimony calculation” (footnote omitted)).
These sums that were erroneously deducted amount to $8,621.75[2] worth of net income available to Former Wife annually, or $718.48[3] worth of income available to Former Wife monthly. It is unclear whether this additional available income would have affected the final judgment; however, we are bound to remand for reconsideration of the judgment in light of the correct net income of Former Wife.
The trial court also erred by setting off the equalization payment, which Former Husband was required to make to Former Wife pursuant to the partial settlement agreement, against Former Wife’s bridge-the-gap alimony obligation.
Alimony is not considered an ordinary debt; and in the absence of compelling equitable considerations, a trial court errs in allowing a set off of debt against alimony. See Glaeser v. Glaeser, 449 So.2d 428, 429-30 (Fla. 2d DCA 1984); Chappell v. Chappell, 253 So.2d 281 (Fla. 4th DCA 1971). It would seem to be a matter of common sense that this rule would apply with special force when the alimony at issue is expressly designed to provide immediate funds to the financially disadvantaged spouse with legitimate identifiable short term needs in order to cushion the transition away from being married to being single. § 61.08(5), Fla. Stat. (2011). Here, the award of $10,900 bridge-the-gap alimony was set off by a $7,772.28 equitable distribution credit, reducing bridge-the-gap alimony payable to Former Husband to $3,127.72. This set-off is inconsistent with the purpose of a bridge-the-gap alimony award.
We accordingly affirm in part and reverse in part the final judgment and remand for further proceedings consistent with this opinion.
AFFIRMED in part; REVERSED in part; and REMANDED.
TORPY, C.J., and WALLIS, J., concur.

. She does not appear to address the money placed into the health savings account.

. $6,921.75 (annual 401(k) contributions) + $1,700.00 (amount of money placed in health savings account per year) = $8,621.75.

. $8,621.75 / 12 months = $718.48.